(No. 77864.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. CHARLES S. NEWBERRY, Appellee.

*Opinion filed June 22, 1995.*

MILLER and FREEMAN, JJ., dissenting.

Roland W. Burris and James E. Ryan, Attorneys General, of Springfield, and David R. Akemann, State's Attorney, of St. Charles (Norbert J. Goetten, William L. Browers and Lisa Anne Hoffman, of the Office of the State's Attorneys Appellate Prosecutor, of Elgin, of counsel), for the People.

G. Joseph Weller, Deputy Defender, and Paul Alexander Rogers, Assistant Defender, of the Office of the State Appellate Defender, of Elgin, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

The issue in this case is whether a criminal defendant charged with unlawful possession of a controlled substance is entitled to have the charges dismissed if the State destroys the substance in question after defense counsel has made a discovery request for it in accordance with Supreme Court Rule 412 (134 Ill. 2d R. 412). For the reasons that follow, we hold that dismissal of the charges is mandated by due process and is an appropriate discovery sanction under Supreme Court Rule 415(g)(i) (134 Ill. 2d R. 415(g)(i)). We therefore affirm.

The defendant in this case is Charles Newberry. In January of 1991, police arrested Newberry and seized a

substance from him they believed to be cocaine. After a field test conducted by police was negative for the drug, the Kane County grand jury indicted him for unlawfully possessing a look-alike substance with intent to distribute (Ill. Rev. Stat. 1991, ch. 56$^1$/2, par. 1404(b) (now 720 ILCS 570/404(b) (West 1992))).

A subsequent laboratory test conducted approximately one month after Newberry's arrest reached a contrary result. It indicated that cocaine was present in the substance seized from him. When this happened, the grand jury returned new indictments, this time charging him with two counts of unlawful possession of a controlled substance with intent to deliver (Ill. Rev. Stat. 1991, ch. 56$^1$/2, par. 1401 (now 720 ILCS 570/401 (West 1992))) and one count of unlawful possession of a controlled substance without paying the requisite tax and affixing a tax stamp (Ill. Rev. Stat. 1991, ch. 120, par. 2160 (now 35 ILCS 520/10 (West 1992))). The grand jury later returned additional indictments charging Newberry with unlawful possession of a controlled substance with intent to deliver while on school property (Ill. Rev. Stat. 1991, ch. 56$^1$/2, par. 1407(b)(1) (now 720 ILCS 570/407(b)(1) (West 1992))) and unlawful possession of a controlled substance (Ill. Rev. Stat. 1991, ch. 56$^1$/2, par. 1402(b) (now 720 ILCS 570/402(b) (West 1992))).

Shortly after the grand jury returned its first set of new indictments, the circuit court granted a motion by the State to nol-pros the original charge of unlawful possession of a look-alike substance with intent to distribute. That charge was withdrawn, and only the controlled substance charges remained. In connection with those charges, Newberry's counsel promptly filed a written discovery motion pursuant to Supreme Court Rule 412 (134 Ill. 2d R. 412). Included in that motion was a request to examine all tangible objects that had been seized from Newberry.

The State's initial response to Newberry's request was routine. A year after the discovery motion was filed, however, the State served a supplemental response advising defense counsel that the substance police thought was cocaine had been destroyed. When a hearing was held on the matter, testimony showed that the party responsible for the destruction was a police department evidence technician. The technician had not destroyed the material because it was necessary to do so as part of the testing process, nor had he acted out of some malevolent purpose. Rather, he had gotten rid of it simply because a computer check showed that the look-alike drug charge had been nol-prossed. The technician mistakenly assumed that this action signaled the end of the case against Newberry and that the material was no longer needed. He did not realize that new charges had been filed involving the same evidence.

When defense counsel learned that the substance had been destroyed, he moved to dismiss the indictments against his client. In the alternative, he asked the court to bar the State from presenting any evidence of the results of the laboratory test of the substance. Following a hearing, the court granted the motion to dismiss, holding that the State's destruction of the substance following receipt of Newberry's discovery request constituted a denial of due process. The appellate court affirmed over the dissent of one justice (265 Ill. App. 3d 688). We then allowed the State's petition for leave to appeal (145 Ill. 2d R. 315).

Section 114—1(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1991, ch. 38, par. 114—1(a) (now 725 ILCS 5/114—1(a) (West 1992))) enumerates the 11 basic grounds for which an indictment, information or complaint may be dismissed. Although none of those grounds are applicable here, a trial judge also has inherent authority to dismiss an indictment for reasons other

than those listed in section 114—1(a). (*People v. Fassler* (1992), 153 Ill. 2d 49, 58.) Specifically, the court may exercise such authority " 'when failure to do so will effect a deprivation of due process or result in a miscarriage of justice.' " *Fassler*, 153 Ill. 2d at 58, quoting *People v. Sears* (1971), 49 Ill. 2d 14, 31.

In the case before us, Newberry asserted, and the circuit and appellate courts agreed, that the destruction of the disputed substance following his discovery request constituted a due process violation. Although the State does not dispute that the failure by police to preserve evidence may violate due process (see *People v. Ward* (1992), 154 Ill. 2d 272, 297-99), it argues that under *Arizona v. Youngblood* (1988), 488 U.S. 51, 102 L. Ed. 2d 281, 109 S. Ct. 333, the destruction of evidence rises to the level of a due process violation only where a defendant can show that the police officers responsible for the destruction acted in bad faith. Because the police evidence technician here simply made a mistake when he discarded the disputed substance and did not act in bad faith, the State reasons that the failure to preserve the evidence cannot justify dismissal of the grand jury's indictments on due process grounds.

In *Youngblood*, the defendant, who was charged with child molestation, sexual assault, and kidnapping, claimed that his due process rights were violated because the State failed to promptly test samples found on the victim's clothing or to properly refrigerate the clothing so that it could be properly tested later. In rejecting this claim, the United States Supreme Court held, as it had in the past, that the good or bad faith of the State is irrelevant when the State fails to disclose to the defendant exculpatory evidence that is material. The Court concluded, however, that the due process clause requires a different result when no more could be said of the evidence "than that it could have been

subjected to tests, the results of which might have exonerated the defendant." (*Youngblood*, 488 U.S. at 57, 102 L. Ed. 2d at 289, 109 S. Ct. at 337.) According to the Court, police do not have "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." (*Youngblood*, 488 U.S. at 58, 102 L. Ed. 2d at 289, 109 S. Ct. at 337.) Where the evidentiary material is only "potentially useful," the failure to preserve that material does not constitute a denial of due process unless a criminal defendant can show bad faith on the part of the police. *Youngblood*, 488 U.S. at 58, 102 L. Ed. 2d at 289, 109 S. Ct. at 337.

*Youngblood* is distinguishable from the case before us today. In *Youngblood*, the disputed material was not essential for establishing the defendant's guilt or innocence. Its value was speculative, and it played no role in the prosecution's case. Because there was no bad faith on the part of the police, the defendant's due process challenge to his conviction was therefore denied. The situation in this case is markedly different. Here, the evidence in question is more than just "potentially useful." It is essential to and determinative of the outcome of the case. Newberry cannot be convicted of the drug possession charges absent proof of the content of the disputed substance, nor does he have any realistic hope of exonerating himself absent the opportunity to have it examined by his own experts.

In an effort to minimize the prejudice to Newberry's defense, the State wrongly asserts that the discarded substance here is no different than the breath sample that the police failed to preserve in *California v. Trombetta* (1984), 467 U.S. 479, 81 L. Ed. 2d 413, 104 S. Ct. 2528. In *Trombetta*, defendants charged with driving under the influence of intoxicating liquor unsuccessfully sought suppression of breath-analysis test results on the

grounds that the police failed to preserve the breath samples, thereby limiting the defendants' ability to challenge the incriminating test results. The State appellate court set aside their convictions, holding that due process demanded that the arresting officers preserve the breath samples, but the United States Supreme Court reversed. The Court reasoned that due process was not violated because the police had acted in good faith and in accord with normal procedures when they failed to preserve the samples, and the testing device's high degree of accuracy made it extremely unlikely that further testing of the samples would have helped the defense. (*Trombetta*, 467 U.S. at 488-89, 81 L. Ed. 2d at 422, 104 S. Ct. at 2534.) The Court further noted that the defendants were not without alternative means of demonstrating their innocence. *Trombetta*, 467 U.S. at 490, 81 L. Ed. 2d at 423, 104 S. Ct. at 2534.

Here, by contrast, nothing in the record indicates that the laboratory procedures used to test the substance were especially reliable or that further testing would not have yielded different and more favorable results for Newberry. In addition, Newberry lacked alternative means for showing that he was not guilty. He could not "obtain comparable evidence by other reasonably available means." (*Trombetta*, 467 U.S. at 489, 81 L. Ed. 2d at 422, 104 S. Ct. at 2534.) The sole basis for bringing criminal charges against Newberry was the chemical content of the substance seized by the police, and when that substance was discarded, it was lost to Newberry forever. It is now impossible for him to "meet or dispute the test results by evidence of equal integrity and persuasiveness." See *People v. Taylor* (1977), 54 Ill. App. 3d 454, 458.

The State asserts that Newberry is not without recourse because he can still assail the State's test results by introducing the conflicting field test results and by

cross-examining the State's experts about the procedures they followed. While these opportunities may exist, the relief they offer is illusory. Whatever the actual reliability of the tests performed in the lab—and the reliability may not be great (see *Taylor*, 54 Ill. App. 3d at 456)—the laboratory analysis of the evidence will carry great weight with the jury (see *Taylor*, 54 Ill. App. 3d at 458), and the jury will undoubtedly give such an analysis more deference than the initial field test procedures, which are inherently less precise and controlled.

Wholly aside from these considerations, there is a fundamental distinction between this case and those decisions cited by the State requiring a showing that the police acted in bad faith. Here, unlike *Youngblood* and *Trombetta*, the police destroyed the disputed substance after defense counsel had requested access to it in his discovery motion. Where evidence is requested by the defense in a discovery motion, the State is on notice that the evidence must be preserved, and the defense is not required to make an independent showing that the evidence has exculpatory value in order to establish a due process violation. (See *People v. Sleboda* (1988), 166 Ill. App. 3d 42, 53.) If the State proceeds to destroy the evidence, appropriate sanctions may be imposed even if the destruction is inadvertent. No showing of bad faith is necessary. (*People v. Koutsakis* (1993), 255 Ill. App. 3d 306, 312.) The appellate court was therefore correct in affirming the circuit court's judgment dismissing the indictments against Newberry here.

Although the appellate court did not address the issue, we note, in closing, that the circuit court's dismissal of the indictments can also be sustained as a proper discovery sanction under our Rule 415(g)(i) (134 Ill. 2d R. 415(g)(i)), independent of any due process considerations. Rule 415(g)(i) confers broad power on the trial court to impose sanctions where, as here, the State fails

to comply with its discovery obligations. Where evidence has been destroyed following a defense request under Rule 412 (134 Ill. 2d R. 412), no showing of bad faith by the State is required in order for the trial court to act. The correct sanction is a decision appropriately left to the discretion of the trial court, and its judgment is entitled to great weight. (See *Koutsakis*, 255 Ill. App. 3d at 312.) Considering the pivotal nature of the evidence at issue in this case, we cannot say that the trial court abused its discretion in dismissing the indictments when it learned that the State had destroyed the material following receipt of the discovery motion filed by Newberry's lawyer.

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Affirmed.*

JUSTICE MILLER, dissenting:

I do not agree with the majority's conclusion that the failure of authorities to preserve certain evidence denied the defendant due process. Unlike the majority, I believe that the present case is controlled, as a matter of Federal constitutional law, by the United States Supreme Court's decisions in *Arizona v. Youngblood* (1988), 488 U.S. 51, 102 L. Ed. 2d 281, 109 S. Ct. 333, and *California v. Trombetta* (1984), 467 U.S. 479, 81 L. Ed. 2d 413, 104 S. Ct. 2528. In accordance with those authorities, I would reverse the judgments of the courts below and allow the present prosecution to go forward.

In *Trombetta*, the Court held that the State was not required to preserve, for possible future testing by the defense, breath samples taken of allegedly intoxicated drivers. In *Youngblood*, a prosecution for child molestation, sexual assault, and kidnapping, the Court held that authorities had no duty to preserve semen samples in a manner that would have enabled the defense to have them tested. The majority opinion seeks to distin-

guish *Youngblood* and *Trombetta* on several grounds, but none of the reasons cited by the court are persuasive.

The majority begins by asserting that the evidence at issue in *Youngblood* "was not essential for establishing the defendant's guilt or innocence" (166 Ill. 2d at 315), while declaring that the evidence at issue here was central to the prosecution's case against the defendant. The majority also maintains that the defendant lacked alternative means of contesting his guilt once the evidence was destroyed and, further, that there is nothing to show that the tests performed by the State prior to the destruction of the evidence were particularly reliable. 166 Ill. 2d at 316.

I do not agree that the holding in *Youngblood* is limited to marginal evidence, or to cases in which a defendant possesses alternative means of countering the evidence of guilt, or to circumstances in which the accuracy of scientific tests performed by the State is unassailable. The Court in *Youngblood* stated:

"The Due Process Clause of the Fourteenth Amendment, as interpreted in *Brady* [*v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194], makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 57, 102 L. Ed. 2d at 289, 109 S. Ct. at 337.

The defendant does not contend that the evidence he sought was exculpatory. Accordingly, the good faith of the authorities remains relevant, and the defendant should not prevail on his claim unless he can show that the State acted in bad faith. As *Youngblood* noted, "The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily

turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood*, 488 U.S. at 56 n.*, 102 L. Ed. 2d at 288 n.*, 109 S. Ct. at 336 n.*.

Like the defendant in *Youngblood*, the defendant in the present case asserts only that the unpreserved evidence might have proved to be exculpatory if it had been subjected to further testing. A laboratory test established the presence of cocaine in the substance allegedly found in the defendant's possession, though an earlier field test had been negative. There is no suggestion here that the authorities were aware, after the laboratory test conducted, that the evidence had any exculpatory value at the time it was destroyed. Of course, at trial the defendant could challenge the accuracy of the test conducted in the laboratory. The defendant could also refer to the negative result of the initial field test. The defendant does not argue that the negative field test was proof of the exculpatory value of the evidence.

Moreover, whatever duty there is to preserve evidence, that duty is limited to evidence likely to be important to the defense. "To meet this standard of constitutional materiality" the evidence must have an exculpatory value apparent prior to its destruction, and the defendant must be unable to obtain comparable proof elsewhere. (*California v. Trombetta* (1984), 467 U.S. 479, 489, 81 L. Ed. 2d 413, 422, 104 S. Ct. 2528, 2534.) The present defendant has failed entirely to satisfy the initial step of that inquiry.

The majority, however, would require a defendant to show bad faith on the part of the State only when the lost or destroyed evidence was not "potentially useful" to the defense and the evidence was not a component of the State's case in chief. (166 Ill. 2d at 315.) The majority's contention, however, "runs directly counter

to the Court's rationale for the bad faith rule and its rejection, in destruction cases, of the *Brady* rule which 'makes the good or bad faith of the State irrelevant.' (*Youngblood*, 488 U.S. at 57, 102 L. Ed. 2d at 289, 109 S. Ct. at 337.)" (*Jones v. McCaughtry* (7th Cir. 1992), 965 F.2d 473, 478.) Indeed, accepting the majority's argument "would not only reinstate the *Brady* rule in some destruction cases, but would do so not because of the exculpatory value of the evidence, but because of its inculpatory value to the government." (*Jones*, 965 F.2d at 478.) To avoid that paradoxical result, I believe that the good faith of the authorities is a relevant consideration here even though the evidence is important to the State's case.

The majority also posits that good faith is irrelevant in this case because the evidence was destroyed after defense counsel requested, during discovery, that it be turned over to the defense. (166 Ill. 2d at 317.) There is no indication in the record, however, that the technician who destroyed the evidence did so to frustrate the defendant's presentation of a defense, or that the technician was even aware of counsel's request. According to the representation made by the assistant State's Attorney, and not disputed by the defendant, the evidence technician destroyed the contraband in June 1991 because he saw that the original indictment, which alleged that the defendant was in possession of a look-alike substance, had been nol-prossed more than three months earlier and therefore believed that the case had been closed. Good faith remains relevant in these circumstances and should be sufficient to defeat the defendant's due process argument. At most, the record shows that the conduct in failing to preserve the evidence was negligence, which is not a violation of due process. See *Youngblood*, 488 U.S. at 58, 102 L. Ed. 2d at 289-90, 109 S. Ct. at 337-38.

Finally, the majority suggests that the trial court's decision to dismiss the charges against the defendant can be sustained as a discovery sanction pursuant to Supreme Court Rule 415(g)(i) (134 Ill. 2d R. 415(g)(i)). Again, the court believes that good faith is irrelevant to this inquiry and that the destruction of the evidence by itself is a sufficient reason for dismissal of the charges. Although defense counsel raised this theory as an alternative ground for dismissal of the indictment, the trial judge did not address the question in his written ruling. In the absence of a finding by the trial court, I am reluctant to determine from the bare record that such an extreme sanction is appropriate here. As noted previously, the evidence did not have any apparent value to the defense, and the technician destroyed it simply because he thought that the charges against the defendant had been dismissed.

For the reasons stated, I would reverse the appellate and circuit court judgments and remand the cause to the circuit court so that the charges against the defendant may be reinstated and the State may proceed with its prosecution.

JUSTICE FREEMAN, also dissenting:

We are here asked to decide whether the trial court's dismissal of the indictment in this case was proper. *People v. Fassler* (1992), 153 Ill. 2d 49, 58, holds that in addition to those bases enumerated in section 114—1(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1991, ch. 38, par. 114—1(a)), a trial court has discretion to dismiss an indictment only where the failure to do so will either effect a deprivation of due process or result in a miscarriage of justice. The majority concludes that the State's destruction of the alleged controlled substance here constituted a denial of defendant's due process rights. Thus, the majority holds that dismissal of

the indictment was proper on that basis and was, additionally, proper as a discovery sanction.

I disagree. While clearly defendant, as a result of the State's destruction, may be hampered in the preparation of his defense, I do not agree that the destruction amounted to a due process violation or that dismissal as a sanction was appropriate. Dismissal of the indictment was an abuse of discretion.

Further, over the course of a 60-year period there has developed a significant body of law concerning a defendant's due process right to access the State's evidence against him. Out of that law has developed an analysis to determine what nondisclosures by the State constitute a due process violation. The majority here finds reason to reject that body of law and the proper analysis. By so doing, I believe that the majority errs.

As a preliminary matter, I find the majority's characterization of the destroyed evidence as "outcome determinative" both problematic and confusing. First, such a determination, prior to trial, presumes the non-existence of other evidence available to support prosecution. Second, whenever any evidence is lost or destroyed its value to the defendant is uncertain and often disputed. There is the possibility, however, that the evidence might have been exculpatory. The majority's "outcome determinative" characterization negates that possibility, thereby defeating any due process claim. Yet, that the defendant is deprived of the opportunity to demonstrate the evidence's exculpatory value must surely be the majority's main concern.

Essentially, the majority holds that where the State mistakenly destroys "outcome determinative" evidence, a defendant suffers a deprivation of due process. This holding is contrary to *Arizona v. Youngblood* (1988), 488 U.S. 51, 102 L. Ed. 2d 281, 109 S. Ct. 333, which this court has determined to follow. (See *People v. Hobley*

(1994), 159 Ill. 2d 272.) *Youngblood* holds that when the government loses or destroys "potentially exculpatory" evidence, absent a finding of bad faith, no due process violation occurs.

By the majority's holding, we now have two Federal due process analyses for lost/destroyed evidence in Illinois: one for lost/destroyed evidence that is "outcome determinative" and another for lost/destroyed evidence that is "potentially exculpatory." In point of fact, however, there is but one due process analysis which developed from the United States Supreme Court's decisions concerning the government's duty to disclose exculpatory evidence. See *Mooney v. Holohan* (1935), 294 U.S. 103, 79 L. Ed. 791, 55 S. Ct. 340; *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194; *United States v. Agurs* (1976), 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392.

Recognition of the source of a defendant's entitlement to disclosure of evidence defines the nature of the harm, as well as the remedy available, for its nondisclosure. In Illinois, upon a defendant's request, the prosecution has a duty to apprise and to make available to a defendant evidence that the State intends to use against the defendant at trial. This duty of disclosure flows from our discovery rules. (See 134 Ill. 2d R. 411 *et seq.*) Where evidence is exculpatory, however, the prosecution has a constitutional duty to disclose such evidence to a defendant. (See *Brady*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194; see also 134 Ill. 2d R. 412(c) (codifying *Brady*).) Although authorized by rule, there simply is "no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case." (*Moore v. Illinois* (1972), 408 U.S. 786, 795, 33 L. Ed. 2d 706, 713, 92 S. Ct. 2562, 2568.) Furthermore, there is no general constitutional right to pretrial discovery in a criminal case, and *Brady*,

373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, created none. See *Weatherford v. Bursey* (1977), 429 U.S. 545, 51 L. Ed. 2d 30, 97 S. Ct. 837; *Cicenia v. LaGay* (1958), 357 U.S. 504, 2 L. Ed. 2d 1523, 78 S. Ct. 1297; see also 134 Ill. 2d R. 412(c), Committee Comments, at 348.

When a defendant is denied access to discoverable evidence, courts recognize that he may be unfairly prejudiced in his ability to adequately prepare to meet the State's evidence against him. Thus, where the State purposefully fails to comply with a discovery request, sanctions as a remedy may be appropriate. (See 134 Ill. 2d R. 415(g).) Where the State fails to disclose exculpatory evidence, irrespective of its intent, a violation of due process occurs and the appropriate remedy is a new trial. (See *Brady*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194; *Hobley*, 159 Ill. 2d at 307.) Because pretrial discovery is not constitutionally mandated, however, that the defendant is handicapped in his trial preparation does not elevate a nondisclosure to a violation of constitutional magnitude. The unfairness which results from a denial of access to other than exculpatory evidence is simply not the same unfairness as is contemplated by the due process clause of the fourteenth amendment (U.S. Const., amend. XIV).

DEVELOPMENT OF THE DUE PROCESS ANALYSIS

The majority's determination that this case is not subject to the same due process analysis as is applied in other lost/destroyed evidence cases is troubling. (See *California v. Trombetta* (1984), 467 U.S. 479, 81 L. Ed. 2d 413, 104 S. Ct. 2528; *Youngblood*, 488 U.S. 51, 102 L. Ed. 2d 281, 109 S. Ct. 333; *People v. Ward* (1992), 154 Ill. 2d 272; *Hobley*, 159 Ill. 2d 272.) Essential to any due process analysis is an understanding of what process is due. A review of the pertinent case law, out of which the analysis developed, is helpful to that understanding.

In *Mooney*, 294 U.S. 103, 79 L. Ed. 791, 55 S. Ct. 340,

the Court ruled on *what* nondisclosure by a prosecutor violates due process. There, the State purposefully pre-sented false testimony against a defendant. The Court stated:

> "[Due process] is a requirement that cannot be deemed to be satisfied by mere notice and hearing if a State has *contrived a conviction* through the pretense of a trial which in truth is but used as a means of depriving a de-fendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured. Such a contrivance by a State to procure the conviction and imprisonment of a defendant is as incon-sistent with the rudimentary demands of justice as is the obtaining of a like result by intimidation." (Emphasis add-ed.) *Mooney*, 294 U.S. at 112, 79 L. Ed. at 794, 55 S. Ct. at 342.

Later in *Brady*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, the Court was confronted with a case in which the government deliberately failed to disclose exculpa-tory evidence to the defendant. The Court held that the government's failure to disclose exculpatory evidence within its possession, whether in good faith or bad, violated the defendant's due process rights. See also *United States v. Agurs* (1976), 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392.

Subsequently, the Court had occasion to address the government's due process obligation to preserve evi-dence which came into its possession during an investi-gation. In *Trombetta*, 467 U.S. 479, 81 L. Ed. 2d 413, 104 S. Ct. 2528, which for obvious reasons is set out in some detail, the defendants were stopped by the police on suspicion of drunk driving and submitted to an "Intoxi-lyzer test." The test showed a blood-alcohol concentra-tion level substantially higher than the level at which a driver is presumed to be intoxicated. The defendants were then arrested for driving while under the influ-ence of alcohol. Prior to trial, the defendants moved to suppress the Intoxilyzer test results, on the basis that

the State's failure to preserve samples of defendants' breath was a violation of due process.

In finding no due process violation, the Court first noted that the State did not destroy the breath samples "in a calculated effort to circumvent the disclosure requirements established by *Brady v. Maryland* and its progeny"; rather, it acted " 'in good faith and in accord with their normal practice.' " *Trombetta*, 467 U.S. at 488, 81 L. Ed. 2d at 422, 104 S. Ct. at 2533, quoting *Killian v. United States* (1961), 368 U.S. 231, 242, 7 L. Ed. 2d 256, 264, 82 S. Ct. 302, 308.

The Court next noted that the government's failure to preserve the breath samples "was without constitutional defect" because the evidence was not of constitutional materiality. "To meet this standard of constitutional materiality [citation], evidence must *both* possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." (Emphasis added.) *Trombetta*, 467 U.S. at 489, 81 L. Ed. 2d at 422, 104 S. Ct. at 2534.

In that regard, the Court noted the unlikelihood that the samples would have been exculpatory. Additionally, the Court reasoned that "[t]he evidence to be presented at trial was not the breath itself but rather the Intoxilyzer results obtained from the breath samples" and that the defendant wanted "the breath samples in order to challenge incriminating test results produced with the Intoxilyzer." *Trombetta*, 467 U.S. at 488, 81 L. Ed. 2d at 421, 104 S. Ct. at 2533.

Even assuming that the Intoxilyzer results were inaccurate and, therefore, the breath samples might have been exculpatory, it did not necessarily show that the defendants were without alternate means of demonstrating their innocence. The Court noted that the

defendants had identified only a small number of ways in which an Intoxilyzer may malfunction and that they were able to raise these issues without resort to the breath samples. Additionally, the defendants were able to cross-examine the police officer who administered the test to attempt to raise doubt in the mind of the fact finder as to whether the test was administered properly. *Trombetta*, 467 U.S. at 490, 81 L. Ed. 2d at 423, 104 S. Ct. at 2535.

*Youngblood*, 488 U.S. 51, 102 L. Ed. 2d 281, 109 S. Ct. 333, built upon the *Trombetta* reference to "bad faith" in analyzing the due process implications of the loss of evidence where the defendant could not obtain comparable evidence by other reasonably available means. There, the State failed to preserve identification evidence which might have eliminated the defendant as the perpetrator. The lower court held that since the main issue at trial was that of identity and since the State was responsible for the destruction of evidence that could have conclusively eliminated the defendant as the perpetrator, due process precluded conviction.

The Supreme Court rejected that reasoning. Where evidence is lost or destroyed, the due process concerns are different from those in *Brady* and other nondisclosure cases where there has been a deliberate suppression of exculpatory evidence. The Court stated that "requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, *i.e.*, those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant." (*Youngblood*, 488 U.S. at 58, 102 L. Ed. 2d at 289, 109 S. Ct. at 337.) Where the evidence was destroyed in bad faith, such "conduct [may] indicate that the evi-

dence could form a basis for exonerating the defendant" (*Youngblood*, 488 U.S. at 58, 102 L. Ed. 2d at 289, 109 S. Ct. at 337), hence a deprivation of due process.

Illinois adheres to the Federal due process analysis applicable in access-to-evidence cases. In *People v. Ward* (1992), 154 Ill. 2d 272, the defendant claimed a due process violation for the State's failure to preserve alleged brain matter of one of the victims. The defendant asserted that the State's failure to preserve the matter denied him his right to have access to material evidence. Guided by the analysis in *Youngblood*, the court held that the police's failure to preserve the evidence could at worst be described as negligent. Consequently, no due process violation occurred because there was no evidence presented which demonstrated bad faith on the part of the police.

This court was next confronted with a due process claim for lost/destroyed evidence in *Hobley*, 159 Ill. 2d 272. There, the defendant requested that the State " 'supply any report and results of any and all scientific test, *** including such tests as *** fingerprints.' " (*Hobley*, 159 Ill. 2d at 306.) The State provided no fingerprint reports.

We there noted that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." We further noted that the policy considerations which underlie *Youngblood* were analogous to those which underlie *Hobley*. "In order to promote the preservation of exculpatory evidence, there must be the possibility of a sanction where evidence is lost or destroyed. On the other hand, a defendant should not be rewarded for the inadvertent loss of a piece of evidence where other evidence sufficient to support his conviction remains." *Hobley*, 159 Ill. 2d at 307.

As is apparent from these several cases, the overrid-

ing due process concern in a defendant's entitlement to access evidence is that a guilty verdict not be contrived by deception. *Brady*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, and its progeny relate only to concealing evidence favorable to the accused, not to providing the defense with notice that will improve its preparation for meeting the government's evidence. (See *Bursey*, 429 U.S. 545, 51 L. Ed. 2d 30, 97 S. Ct. 837.) Hence, the requirement, in lost/destroyed evidence cases, that for purposes of due process, there be a showing of bad faith on the part of the State. Simply put, a defendant has no due process right to have incriminating evidence not used to secure his conviction.

## THE MAJORITY'S ANALYSIS

The majority attempts to distinguish *Youngblood* from this case on several grounds. First, the majority notices that in *Youngblood*, the disputed evidence was not essential to establish the defendant's guilt or innocence; the unpreserved evidence "played no role in the prosecution's case." (166 Ill. 2d at 315.) Here, on the other hand, the evidence was "outcome determinative." Additionally, the majority finds significant that in *Youngblood*, the evidence was merely "potentially useful," while here, the evidence is "essential to and determinative of the outcome of the case." These factors, the majority concludes, set this case apart from *Youngblood*. 166 Ill. 2d at 315.

The majority's asserted distinctions lack validity. *Youngblood* stated a general due process standard governing the State's failure to preserve evidentiary material. That standard was not limited to the facts in *Youngblood*. There is absolutely no support for the conclusion that the due process analysis in *Youngblood* is confined to situations in which the destroyed evidence is not utilized at trial.

Further, that the evidence there was "potentially

useful" is merely a factual distinction which does not serve to defeat operation of the general standard. Moreover, for purposes of due process, the character of the evidence has been properly treated merely as a factor in the analysis.

The relevant inquiry concerning the character of the evidence in both nondisclosure and preservation-of-evidence cases is whether that evidence is material to the defendant's guilt or punishment. (See *Brady*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194; *Trombetta*, 467 U.S. at 489, 81 L. Ed. 2d at 422, 104 S. Ct. at 2534.) The Court in *United States v. Agurs* (1976), 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392, a nondisclosure case, considered the proper standard of materiality in the context of *exculpatory* evidence. Significantly, the Court noted that "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." (*Agurs*, 427 U.S. at 109, 49 L. Ed. 2d at 353, 96 S. Ct. at 2400.) The proper standard of materiality must, instead, reflect our society's overriding concern with the justice of the finding of guilt. *Agurs*, 427 U.S. at 112, 49 L. Ed. 2d at 354, 96 S. Ct. at 2401; see also *People v. Montague* (1986), 149 Ill. App. 3d 332; *People v. Norks* (1985), 137 Ill. App. 3d 1078; *People v. Ojeda* (1980), 91 Ill. App. 3d 723.

In the context of lost or destroyed evidence, *Trombetta* requires that the evidence possess an exculpatory value that was apparent to the government before its destruction *and* be of such a nature that the defendant would not be able to obtain comparable evidence by other reasonably available means. *Trombetta*, 467 U.S. at 489, 81 L. Ed. 2d at 422, 104 S. Ct. at 2534.

The majority here appears to find constitutional materiality in the fact that the destroyed evidence is

"outcome determinative." The apparent concern: defendant, by the State's destruction, has no ability to challenge it. (166 Ill. 2d at 317.) However, as *Trombetta* requires, there is no assertion that the State had knowledge that the drugs were exculpatory before it destroyed them. Furthermore, by the majority's "outcome determinative" characterization, the drugs were apparently inculpatory. Additionally, it is not the drugs themselves which are proof of the offense, but rather the chemical analysis. As in *Trombetta*, defendant would not be without an opportunity to challenge the reliability of the State's analysis and to cross-examine the State's witness.

Even concluding that *Trombetta* constitutional materiality is not required, there is nonetheless no due process violation. *Youngblood* creates a greater due process hurdle—even where there is no comparable evidence, absent bad faith, there is simply no deprivation.

The majority also asserts that this case differs from *Youngblood* because here, unlike in *Youngblood*, the evidence was requested prior to the State's destruction. The majority holds that "[w]here evidence is requested by the defense in a discovery motion, the State is on notice that the evidence must be preserved, and the defense is not required to make an independent showing that the evidence has exculpatory value in order to establish a due process violation." 166 Ill. 2d at 317.

The State's failure to meet defendant's discovery demand may implicate remedies available for noncompliance with discovery. (See 134 Ill. 2d R. 415(g).) However, more is required for a due process violation. That evidence was destroyed subsequent to a defendant's request is not, of itself, determinative either of the State's level of culpability or of the character of the evidence.

Although *Youngblood* is dispositive, I note also my

disagreement with the majority's finding that this case is inapposite to *Trombetta*, 467 U.S. 479, 81 L. Ed. 2d 413, 104 S. Ct. 2528. The majority here reasons that, unlike in *Trombetta*, "nothing in the record indicates that the laboratory procedures used to test the substance were especially reliable or that further testing would not have yielded different and more favorable results for Newberry. In addition, Newberry lacked alternative means for showing that he was not guilty." (166 Ill. 2d at 316.) It concludes that the sole basis for bringing criminal charges against the defendant was the chemical content of the substance seized by the police, and when that substance was discarded, it was lost to the defendant forever.

In making its distinction, the majority misreads *Trombetta*. As has already been stated, under *Trombetta* the State's duty to preserve evidence requires (1) a finding of bad faith on the part of the State and (2) constitutional materiality. To satisfy constitutional materiality, the defendant must demonstrate that the State knew of the evidence's exculpatory value before destruction *and* that there is no comparable evidence available. Again, there is no assertion that the State believed that the evidence was exculpatory at the time of its destruction. As the majority notes, the drugs were destroyed out of a mistaken belief that the case had ended. (166 Ill. 2d at 313.) Thus, part one of the *Trombetta* test is not satisfied.

Further, and as in *Trombetta*, the defendant here is not necessarily deprived of a means to demonstrate his innocence. As the State suggested, defendant may attack the reliability of the chemical analysis and the procedures used in the testing. Additionally, defendant may cross-examine the chemical analyst, as well as any other of the State's witnesses involved in the case. Thus, part two of the *Trombetta* test is not satisfied.

Incidentally, some courts automatically assume lost or destroyed evidence was favorable as long as the available evidence does not suggest otherwise. In still others, however, even though there is a possibility that the missing evidence was exculpatory, a defendant's claim in that regard will be rejected especially when the missing item was subjected to a scientific test before it was lost and the test results were both incriminating and generally reliable. (2 W. LaFave, Criminal Procedure § 19.5 (1984); see also *People v. Tsombanidis* (1992), 235 Ill. App. 3d 823, 836, citing *Howard v. United States* (D.C. App. 1984), 473 A.2d 835 (discussing the reliability and objectivity in DEA chemical drug testing).) Significantly, the concern in the due process analysis is not whether the defendant will prevail in meeting the State's evidence against him, but that his conviction not be the result of the governmental overstepping.

## DUE PROCESS ANALYSIS

*Youngblood*, and now *Hobley*, should guide this court's decision here. The proper focus of the analysis, as is clear from the decisional law in this area, is on (1) the nature of evidence and (2) the government's culpability in its nonaccessibility to the defendant.

In *Hobley*, we developed a pragmatic balancing test for determining whether lost or destroyed evidence has resulted in a violation of due process. The factors to be considered are "(1) the degree of negligence or bad faith by the State in losing the evidence, and (2) the importance of the lost evidence relative to the evidence presented against the defendant at trial." *Hobley*, 159 Ill. 2d at 307; see also 2 W. LaFave, Criminal Procedure § 19.5 (1984).

Balancing these factors, I would find no due process violation. First, "[t]he presence or absence of bad faith *** turn[s] on the police's knowledge of the exculpatory value of the evidence at the time it was lost or de-

stroyed." (*Youngblood*, 488 U.S. at 56 n.*, 102 L. Ed. 2d at 288 n.*, 109 S. Ct. at 336 n.*.) As the majority points out, there is no indication that the State acted in bad faith for the purpose of avoiding *Brady*'s disclosure requirement. Second, it is logical to presume that the State intended to present the chemical analysis evidence. Clearly, it is the chemical analysis of the drugs, and not the drugs themselves, which is most important here. Although the drugs themselves are not available, defendant is not deprived of the opportunity to challenge the reliability of the analysis. Given that opportunity, due process is satisfied. See *Trombetta*, 467 U.S. 479, 81 L. Ed. 2d 413, 104 S. Ct. 2528; see also *Tsombanidis*, 235 Ill. App. 3d 823 (holding that the State's inadvertent decision to destroy drug evidence did not constitute a violation of defendant's due process rights under *Youngblood*); 265 Ill. App. 3d at 697 (Doyle, J., dissenting), citing *United States v. Barton* (9th Cir. 1993), 995 F.2d 931 (holding that under *Youngblood*, State's failure to preserve marijuana plants did not violate due process where there was no bad faith); *Bailey v. United States Parole Comm'n* (N.D. Ill. 1991), 769 F. Supp. 1025 (holding that failure to save defendant's urine sample, which tested positive for cocaine, did not violate *Youngblood* where the government's conduct was not in bad faith).

By my conclusion, I do not suggest that the defendant was not impaired in the preparation of his defense by the destruction of the evidence. Clearly, he was. However, there is no evidence of the State's bad faith in the destruction of this evidence. Thus, dismissal of the indictment is not supported on due process grounds.

## SANCTIONS

The majority additionally concludes that even if the dismissal of the indictments was not proper on due process grounds, it was proper as a sanction for a discovery violation. I disagree. Discovery sanctions are punitive in

nature and are designed to compel compliance. (See *People v. Brown* (1982), 106 Ill. App. 3d 1087; *People v. Leannah* (1979), 72 Ill. App. 3d 504.) As the State did not act in bad faith, punishment is inappropriate. As the evidence has been destroyed, compliance is impossible.

The trial court, however, was not without means to eliminate the potential prejudicial effect of the State's mistaken destruction of the drugs. Admissibility of evidence at trial is a matter left to the sound discretion of the trial court. (*People v. Ward* (1984), 101 Ill. 2d 443, 455-56.) As a practical matter, the court could have diminished any potential for prejudice simply by precluding the State's presentation of the chemical analysis evidence. (See M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 402.1 (6th ed. 1994) (the trial court has discretion to exclude relevant evidence if its probative value is overshadowed by the danger of unfair prejudice, confusion of the issues or waste of time).) The parties would then have been placed on equal footing and the State could then decide the sufficiency of any other of its evidence, circumstantial or otherwise, for purposes of deciding whether to pursue prosecution.

For the foregoing reasons, I dissent.