# Illinois Official Reports

## Appellate Court

---

### *People v. Bolden*, 2014 IL App (1st) 123527

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDDIE L. BOLDEN, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-12-3527 |
| Filed | June 18, 2014 |
| Rehearing denied | July 31, 2014 |
| Modified upon denial of rehearing | August 6, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where defendant's postconviction petition challenging his conviction for two murders was dismissed without an evidentiary hearing, the appellate court reversed the dismissal and remanded for an evidentiary hearing, since defendant made a substantial showing that he was prejudiced by his trial counsel's unprofessional errors, including his failure to move for the dismissal of the indictment after two firearms defense counsel requested in discovery were destroyed by the police and his failure to interview three witnesses in connection with a possible alibi, especially when there was a reasonable likelihood that a better result could have been achieved absent those errors. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 94-CR-8397; the Hon. William G. Lacy, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Schiff Hardin LLP, of Chicago (Ronald S. Safer and Willoughby Anderson, of counsel), for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Jeffrey Allen, and Miles J. Keleher, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE NEVILLE delivered the judgment of the court, with opinion.
Justices Pucinski and Mason concurred in the judgment and opinion.

## OPINION

¶ 1    Eddie Bolden appeals from the dismissal of his postconviction petition without an evidentiary hearing. A jury found Bolden guilty of two murders. The appellate court affirmed the convictions. *People v. Bolden*, No. 1-96-4221 (1999) (unpublished order under Supreme Court Rule 23). In his postconviction petition, Bolden asserted that he received ineffective assistance of counsel because his trial counsel failed to contact an alibi witness, and because trial counsel failed to move for discovery sanctions when police destroyed physical evidence defense counsel requested in discovery. We find that Bolden has made a substantial showing of ineffective assistance of trial counsel. We reverse and remand for an evidentiary hearing on the postconviction petition.

¶ 2                                    BACKGROUND

¶ 3    Around 8 p.m. on January 29, 1994, Lee Williams heard gunshots outside his home near 66th and Minerva on Chicago's south side. He saw a car with black smoke coming out of its tailpipe in front of his home. Someone got out of the backseat of the car and started walking north. Police, responding to a call of a car on fire near 66th and Minerva, found Irving Clayton and Derrick Frazier, dying from gunshot wounds, in the burning car's front seats. Police found spent cartridges in the car.

¶ 4    Around 8 or 8:30 p.m. the same evening, Derrick's brother, Clifford Frazier, ran into J&J Fish, a restaurant near 64th and Cottage Grove, a few blocks from the car on fire. Clifford held a gun. He said, "I'm shot in the back, help me." Someone from the restaurant called 911. Near the restaurant, police found two guns: a .40 automatic and a Mack-11 semi-automatic.

¶ 5    A bullet wound to the back of Derrick's head killed him. Stippling indicated that the killer fired the fatal shot with the gun nearly in contact with Derrick's head. Clayton died from three gunshot wounds to the right side of his head.

¶ 6    Detective Michael Baker interviewed Clifford in the hospital. Clifford described the man who shot him and gave an account of the circumstances that led to the shooting. After Baker talked to Clifford, police found two kilograms of cocaine in Clayton's car.

¶ 7    Police later learned that Bolden frequented the J&J Fish near 64th and Cottage Grove. Police left word with Bolden's mother that they wanted to question Bolden about the shooting. Bolden hired Charles Ingles, an attorney, to help him with the encounter with police. Ingles contacted police and arranged to accompany Bolden to the Area 2 violent crimes unit, where police would question Bolden.

¶ 8    On February 26, 1994, police questioned Bolden briefly, and then asked him to participate in a lineup. Following the lineup, police arrested Bolden and charged him with the murders of Clayton and Derrick, and the attempted murder of Clifford.

¶ 9                            Pretrial Proceedings

¶ 10   Bolden moved to suppress the lineup identification. At the hearing on the motion, Ingles testified that police directed Bolden to wait with Ingles in the waiting room before they began questioning him. Ingles saw a man matching Clifford's description walk directly past him, escorted by a detective. The man looked back at Bolden. Bolden later agreed to participate in the lineup as long as police allowed Ingles to observe the identification procedures. Police told Ingles he could do so. Bolden joined the other participants in the lineup. The man fitting Clifford's description went into the room where a witness would view the lineup to make an identification. Ingles went to follow him, but Detective Angelo Pesavento blocked him and told him he could not enter the room. No one other than police saw what the police did to elicit the identification of Bolden as the shooter.

¶ 11   Bolden's testimony at the hearing corroborated Ingles's testimony. Bolden added that during the lineup, Detective George Karl twice asked, "you, Eddie Bolden, right?"

¶ 12   Detective Pesavento admitted that Clifford failed to choose Bolden's photo from a photo lineup as a picture of the shooter. Police did not find persons comparable to Bolden's height for the lineup in person. Police had the participants sit for the lineup in person.

¶ 13   Detective Karl testified that when Ingles first asked to watch the police procedures during the lineup, Karl told him police would not permit observation. Karl testified that he did not call Bolden by name during the lineup.

¶ 14   The court held that police acted properly and denied the motion to suppress the lineup identification.

¶ 15   A state employee tested the two guns found near the murder scene on the night of the shootings. In discovery, defense counsel requested production of all physical evidence, including the guns. Police destroyed the guns before any defense expert could test them.

¶ 16                            Trial and Appeal

¶ 17   The trial took place in 1996. The State sought the death penalty. Bolden moved to have the court not question prospective jurors about their attitudes to the death penalty, because studies have shown that juries that meet *Witherspoon* (*Witherspoon v. Illinois*, 391 U.S. 510 (1968)) criteria for accepting the death penalty convict defendants on significantly weaker evidence than that needed to persuade juries drawn from the general population. See *Grigsby*

- 3 -

*v. Mabry*, 758 F.2d 226, 232-38 (8th Cir. 1985), *rev'd*, *Lockhart v. McCree*, 476 U.S. 162, 173-78 (1986); see also *People v. Free*, 112 Ill. 2d 154, 171-72 (1986) (upholding the constitutionality of using *Witherspoon* questions to get a death-qualified jury; like the *Lockhart* Court, the *Free* court accepted the validity of the studies cited in *Grigsby* which show that death-qualified juries consistently convict defendants on weaker evidence than the evidence needed to obtain convictions from juries drawn from the general population).

¶ 18    The trial court denied the motion to restrict questioning of the members of the venire. The court selected 12 jurors and 3 alternates who did not find the death penalty problematic.

¶ 19    Clifford presented the only narrative account of the murders. Clifford testified that Derrick and Clayton planned to sell two kilograms of cocaine, and they asked Clifford to accompany them. They gave Clifford two loaded guns: a .40 automatic and a Mack-11 semi-automatic. They took three separate cars to J&J Fish. Clayton left the cocaine in his car. Derrick introduced Clifford to Anthony Williams, who had purchased drugs from Derrick and Clayton on other occasions. Anthony told Derrick that Clifford could not stay in J&J because Clifford had guns. Clifford went across the street to a carry-out restaurant. Through the window he watched as a man he had never seen before entered the restaurant and joined Anthony, Derrick and Clayton. After a few minutes, Derrick, Clayton and the other man came into the carry-out place. Clifford looked at the man he did not know when that man asked for change from the carry-out cashier. Derrick, Clayton and the other man then went to Derrick's car (although Clayton's car still held the cocaine). Derrick and Clayton got in the front, and the other man got in the backseat. They drove off.

¶ 20    Clifford testified that he stood by his car and waited for Derrick and Clayton, with the .40 in his pocket. About 15 minutes after they drove off, the man he saw earlier in the carry-out place came up and started shooting at him, hitting Clifford in the back and leg. Clifford shot back, emptying the .40. Clifford dropped the .40 and the man picked it up. The man came up to Clifford and put a gun to his head. When he did not shoot, Clifford grabbed the man's arm. The man hit Clifford's head repeatedly and ran off. Employees of J&J let Clifford in. He described the shooter to police. He identified Bolden, in court, as the man who met with Derrick, Clayton and Anthony in J&J, who came with Derrick and Clayton into the carry-out place, who rode in the back of Derrick's car, and who shot and pummeled Clifford. Clifford also testified that he identified Bolden as the shooter in a lineup held at Area 2 on February 26, 1994. Although Clifford admitted that he participated in a drug transaction, police never charged him with any crime.

¶ 21    Richard Chenow testified as an expert for the State. He tested eight bullet casings, three from the murder scene and five from the shooting of Clifford. He found that a single gun fired all of the bullets. He tested both the .40 and the Mack-11 and found that neither gun could have fired any of the bullets that hit Clifford or the bullets that killed Derrick and Clayton.

¶ 22    The defense relied primarily on two alibi witnesses. Tenesha Gatson, who worked at J&J, testified that she knew Bolden from the neighborhood where they both grew up. On January 29, 1994, Bolden came into J&J around 6:30 p.m. and started playing at a Pacman machine in the restaurant. Gaston spoke to him several times that evening. Bolden did not leave her sight for any prolonged period of time. Bolden was still in the restaurant when Clifford ran in, bleeding.

- 4 -

¶ 23    Edna Williams, owner of J&J, corroborated Gaston's testimony. She, too, saw Bolden in the restaurant after 6 p.m. on January 29, 1994. Bolden was still in the restaurant when Clifford ran in. On cross-examination, Edna admitted that Bolden had frequented J&J for years. When Bolden lived in the building over the restaurant, Edna saw Bolden every day. He sometimes helped out with the work at J&J.

¶ 24    Defense counsel attacked Clifford's credibility. Detective Baker testified for the defense about his interview of Clifford in the hospital. Baker admitted that Clifford did not say he had seen the shooter meeting Derrick and Clayton or that the shooter came into the carryout place. Although the police report indicated that Clifford described the attacker as 5 feet 10 inches to 6 feet tall with a medium build, Baker testified that Clifford described the attacker as skinny, 6 feet tall, and clean shaven, with a light complexion. Clifford also told police the attacker had low-cut hair, like Clifford's.

¶ 25    Bolden, who had a moderately dark complexion, stood 6 feet 2 inches, weighed 150 pounds, and was bald, with a mustache, on the night of the murders.

¶ 26    In closing argument, the prosecutor argued that because the alibi witnesses sought to help their friend, Bolden, the jury should not believe their testimony.

¶ 27    The jury found Bolden guilty of murdering Derrick and Clayton, and attempting to murder Clifford. The trial court sentenced Bolden to life in prison.

¶ 28    Bolden appealed. His appellate counsel argued that the trial court should have suppressed the lineup identification, the court should not have instructed the jury that Bolden had no right to have his counsel view the lineup, the court should not have barred Ingles from testifying that police usually allow attorneys to watch when a witness attempts to make an identification from a lineup, the State impermissibly argued facts not in evidence, and the evidence did not prove Bolden guilty beyond a reasonable doubt. The appellate court rejected all of the arguments and affirmed the convictions and sentence. *Bolden*, No. 1-96-4221.

¶ 29                              Postconviction Petition

¶ 30    In October 1999, Bolden filed a postconviction petition in which he argued that he received ineffective assistance of trial counsel and appellate counsel. Bolden claimed primarily that trial counsel should have moved to dismiss the indictment after police destroyed the guns, and that trial counsel failed to interview and bring into court three witnesses who had seen Clifford enter J&J after the shooting, one of whom would provide credible alibi testimony.

¶ 31    In support of the petition, Bolden presented a form on which his trial counsel submitted a written request for an investigator working for the public defender to contact Vondell Goins, Octavia Jackson, and Todd Henderson. Trial counsel supplied phone numbers, addresses, and dates to contact the witnesses. The forms show that an investigator wrote "oral response has been given" to trial counsel.

¶ 32    Bolden also attached to the petition affidavits from Goins, Jackson and Henderson. Goins swore that she spoke to police in J&J after the shooting, but no investigator or attorney contacted her between the night of the murders in 1994 and 2011, when an investigator working on the postconviction petition contacted her. Goins said she was in J&J when Clifford ran in. The investigator who contacted her in 2011 showed her a picture of Bolden.

- 5 -

She swore that she was talking with Bolden and Jackson when she heard gunshots outside the restaurant, and Bolden remained in the restaurant when Clifford entered.

¶ 33   According to Jackson's affidavit, Jackson could not remember speaking to any defense investigator or attorney about the events of January 29, 1994. She corroborated Goins's statement that they were in J&J talking to a young man when they heard shots. In her affidavit, Jackson did not say whether she could identify Bolden as the young man she and Goins spoke with.

¶ 34   Henderson, in his affidavit, swore that he saw Goins and Jackson in J&J, saw the fight outside J&J, and he could describe both the victim in the fight and all the persons in J&J at the time of the fight. He, too, swore that no investigator or attorney for Bolden ever contacted him.

¶ 35   The State moved to dismiss the petition. The trial court held that the request to the investigator showed that Bolden's trial counsel made a reasonable investigation and a strategic decision not to call Goins and the corroborating witnesses at trial. The trial court held that the claim related to the destroyed guns did not require a hearing because "[t]here was no indication that the weapons were linked to the petitioner or used by him during the shooting." The court granted the motion to dismiss the postconviction petition without holding an evidentiary hearing. Bolden now appeals.

¶ 36                                    ANALYSIS

¶ 37   We review *de novo* the dismissal of a postconviction petition at the second stage of postconviction proceedings. *People v. Coleman*, 183 Ill. 2d 366, 381-89 (1998). At this stage of postconviction proceedings, the court must assume the truth of all facts alleged in the postconviction petition and its supporting documents, unless the record contradicts the allegations. *Coleman*, 183 Ill. 2d at 385; *People v. Ward*, 187 Ill. 2d 249, 255 (1999). We must determine whether the petition and its accompanying documents make a substantial showing of a violation of the defendant's constitutional rights. *People v. Edwards*, 197 Ill. 2d 239, 243-46 (2001). The court must not resolve any issues of fact without an evidentiary hearing. *People v. Domagala*, 2013 IL 113688, ¶ 35.

¶ 38                       Failure to Move for Discovery Sanctions

¶ 39   The trial record shows that Bolden's trial counsel did not move for sanctions when he learned that police destroyed the guns found near the crime scene after he had requested production of those guns in discovery. Bolden argues that under the law in effect at the time of the trial, he had a reasonable probability of persuading the court to dismiss the charges against him if his trial counsel had filed an appropriate motion. The State asks us to consider how the trial court should have decided the motion under *People v. Sutherland*, 223 Ill. 2d 187 (2006), even though our supreme court had not decided that case before Bolden's trial. We agree with Bolden that in assessing whether trial counsel provided ineffective assistance, we must evaluate counsel's conduct in light of the law in effect at the time counsel provided assistance. *Strickland v. Washington*, 466 U.S. 668, 690 (1984).

¶ 40   At the time of Bolden's trial, in 1996, *People v. Newberry*, 166 Ill. 2d 310 (1995), stated the applicable law. In *Newberry*, the State charged Newberry with selling a look-alike substance as narcotics. When the State changed the charge to selling narcotics, an officer

- 6 -

who received notice of the dismissal of the original charge destroyed the substance Newberry had sold, the substance the State claimed to be narcotics. The trial court found that the destruction of the evidence, without permitting Newberry to test the substance to determine whether it contained narcotics, deprived him of due process, even though police had already tested the substance and even though Newberry could not show that police acted in bad faith when they destroyed the substance. Our supreme court affirmed the trial court's decision to dismiss the charges against Newberry as an appropriate sanction for the destruction of crucial evidence. The *Newberry* court emphasized the trial court's broad discretion to impose sanctions proportional to the magnitude of the discovery violation. *Newberry*, 166 Ill. 2d at 317-18; see *In re Julio C.*, 386 Ill. App. 3d 46, 52 (2008) (although the State disputes the relevance of *In re Newberry* to this case, it cites *Julio C.* for the proposition that the trial court has discretion to impose a sanction proportional to the discovery violation).

¶ 41    Here, police destroyed the guns found near the scene of the crime after defense counsel requested them in discovery. The destruction of the evidence precluded Bolden from obtaining the opinion of an expert who did not work for the prosecutors as to whether his own tests confirmed the conclusion of the State's expert that neither of those guns could have fired the bullets that killed Derrick and Clayton. We cannot see any strategic purpose for the decision not to move for sanctions after police destroyed the evidence defense counsel requested. See *Kimmelman v. Morrison,* 477 U.S. 365, 385 (1986) (failure to seek discovery served no strategic purpose). We find that trial counsel provided objectively unreasonable assistance when he failed to move for discovery sanctions after police destroyed some of the evidence he requested in discovery.

¶ 42    Next, we must determine whether Bolden has substantially shown a reasonable probability of achieving a better result if his attorney had moved for discovery sanctions. Bolden argues that under *Newberry*, the trial court likely would have dismissed the charges. The *Newberry* court affirmed the dismissal of drug charges against Newberry because of the "pivotal nature" of the substance destroyed before defendant could independently test the substance. *Newberry*, 166 Ill. 2d at 318. Here, police did not destroy the bullets that killed the victims, it destroyed two guns that, according to the State's expert did not fire the fatal bullets. Bolden points out that he could have hired an expert to run separate tests and challenge the opinion of the State's expert if the State had not destroyed the evidence. But we find that the proposed tests here have primarily speculative value (see *Newberry*, 166 Ill. 2d at 315), and therefore, we find that Bolden has not substantially shown a reasonable probability that the trial court would have dismissed the charges entirely due to the destruction of the evidence.

¶ 43    In line with the trial court's broad authority to fashion an appropriate sanction for a discovery violation (see *Julio C.*, 386 Ill. App. 3d at 52), we find a reasonable likelihood that a motion for discovery sanctions would have induced the court to impose a lesser, more appropriate sanction, such as precluding the State's firearms expert from testifying about the results of his tests on the guns found at the scene, and precluding the State from arguing that any testing or expert opinion supports the conclusion that Clifford's two guns did not fire the fatal shots. Just as the defense's inability to contest testimony through cross-examination renders the testimony inadmissible, the defense's inability to test physical evidence because the State destroyed the evidence after the defense requested it should render testimony about the physical evidence inadmissible. See *Crawford v. Washington*, 541 U.S. 36, 59 (2004)

(testimony of deceased witness admissible only if defendant had an adequate prior opportunity to challenge the testimony through cross-examination). We will not consider the effect of this sanction on the likely outcome of the trial in isolation. Instead, we consider the cumulative effect of trial counsel's errors. See *People v. Vera*, 277 Ill. App. 3d 130, 141 (1995).

¶ 44                                Failure to Investigate

¶ 45    Bolden contends that his trial counsel provided ineffective assistance by failing to interview and present at trial Vondell Goins and two other witnesses who would corroborate some aspects of her alibi testimony. The State answers first that the record shows Bolden's trial counsel took adequate steps to find out about the possible alibi witnesses' testimony, as he asked an investigator to interview Goins and the other supporting witnesses. The record shows only that the investigator reported back to trial counsel about an effort to reach Goins. The record does not contradict Goins's sworn statement that no investigator or attorney for the defense ever contacted her. The record does not show what steps, if any, the investigator took in response to trial counsel's request. The record does not show that trial counsel made adequate efforts to contact Goins and the supporting witnesses, or that he adequately investigated the alibi witnesses.

¶ 46    The failure to call an available alibi witness substantially showed ineffective assistance of counsel in *People v. Tate*, 305 Ill. App. 3d 607, 612 (1999). We find that here, too, the failure to contact Goins and the other witnesses substantially shows an objectively unreasonable investigation of the case. We also find that Bolden has substantially shown that if trial counsel had not committed unprofessional errors, he could have presented Goins at trial as an alibi witness, providing credible evidence that Bolden arrived at J&J before the shooting and he stayed there until sometime after Clifford was shot. Bolden also could have presented testimony from Jackson and Henderson to corroborate aspects of Goins's alibi testimony.

¶ 47                                Prejudicial Effect

¶ 48    We will not reverse the trial court's dismissal of the postconviction petition unless Bolden has also substantially shown that he would have achieved a better result if counsel had not committed the unprofessional errors. *Domagala*, 2013 IL 113688, ¶ 36. No physical evidence connects Bolden to the offenses. The prosecution rested its case against Bolden on Clifford's testimony and the testimony of the expert who said that the bullets that killed Clayton and Derrick came from the gun used to shoot Clifford. Clifford identified Bolden as the man he saw talking with Anthony, Derrick and Clayton during a drug deal, as the man he saw at close range in the carryout place, and as the man who fired a gun at Clifford repeatedly and pummeled his head with a gun.

¶ 49    But Clifford's identification of Bolden has several weaknesses. Detective Baker testified that Clifford described the shooter as clean-shaven and light-complected. Clifford also told police that the shooter had low-cut hair. The police report indicated that Clifford described the shooter as 5 feet 10 inches to 6 feet tall, with a medium build. Bolden was 6 feet 2 inches tall, very thin, dark-complected and bald, and he had a mustache. Bolden's attorney, Ingles, testified that Clifford walked very close to him and Bolden in the police station, shortly

before the lineup, and police prevented Ingles, or anyone not on the police force, from viewing the methods they used to convince Clifford to identify Bolden as the shooter.

¶ 50 Also, the evidence suggests that Derrick and Clayton knew the shooter very well, and trusted him, as they allowed the shooter to sit alone in the backseat of Derrick's car while Derrick and Clayton sat in front. No evidence indicates that Derrick or Clayton knew Bolden before the night of the shooting. Clifford, Derrick's brother, had never met Bolden before.

¶ 51 Two alibi witnesses testified for Bolden, but the prosecution undercut the credibility of those witnesses by pointing out that they knew Bolden personally and sought to help him. Goins would have testified in support of Bolden's alibi, and her testimony would not suffer the same vulnerability that afflicted the testimony of Edna and Gaston. The exclusion of the expert testimony that Clifford's guns did not fire the fatal bullets could further persuade a trier of fact to find a reasonable doubt. In light of the substantial problems with Clifford's identification of Bolden as the shooter and the lack of any other evidence against Bolden, the failure to present Goins's alibi testimony, with partial corroboration from Jackson and Henderson, and the failure to move for discovery sanctions, which should have led the trial court to bar the State from presenting testimony from a firearms expert about testing Clifford's guns, had prejudicial effect. Bolden has made a substantial showing of a reasonable likelihood that he would have achieved a better result but for trial counsel's errors.

¶ 52                         New Judge on Remand

¶ 53 Finally, Bolden asks us to direct the circuit court to appoint a new judge to hear the case on remand. He points out that the trial court said, "I got a call from a retired federal judge asking why this case was going on so long and when I explained to them that Mr. Bolden has been the cause of all the delays, Mr. Bolden writes letters to my presiding judge, I believe he's written letters to the chief judge downtown, and he did file that habeas petition." The trial court also commented on the credibility of Bolden's assertions, as he found the destruction of the guns insignificant because "[t]here was no indication that the weapons were *** used by [Bolden] during the shooting." We find that Bolden should present this argument to the circuit court before we address it. Bolden may present the issue to the circuit court on remand in a petition for substitution of judge.

¶ 54                         CONCLUSION

¶ 55 Bolden made a substantial showing that his trial counsel committed unprofessional errors by failing to move to dismiss the indictment after police destroyed evidence that defense counsel requested in discovery, and when he failed to contact an alibi witness. In light of the extremely thin case for the prosecution, based solely on the identification testimony of a single witness who did not know Bolden, and whose initial description of the shooter did not closely match Bolden's appearance, we find that Bolden has substantially shown that he suffered prejudice due to trial counsel's errors. Accordingly, we reverse the trial court's judgment and remand for an evidentiary hearing on the postconviction petition.

¶ 56        Reversed and remanded.