THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JIMMIE KING, Defendant-Appellant.

First District (3rd Division)   No. 1—91—0118

Opinion filed June 30, 1993.

Timothy P. Nance, of Tinley Park, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Kenneth T. McCurry, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CERDA delivered the opinion of the court:

After a jury trial, defendant, Jimmie King, was found guilty of first degree murder (Ill. Rev. Stat. 1989, ch. 38, par. 9—1(a)(1)) for the death of Andrew Vaitkus and sentenced to 60 years' imprisonment. On appeal, defendant asserts that the trial court erred in (1) denying his motion *in limine* to preclude the State from offering evi-

dence of other crimes; (2) overruling defense objections to prejudicial evidence of a missing watch introduced by the State in violation of Supreme Court Rule 412 (134 Ill. 2d R. 412); (3) ordering the jury to disregard a material witness' direct response to a defense question on cross-examination; and (4) sentencing him to an excessive sentence.

Patricia Marion, an X-ray technician, testified that she and defendant left work at the West Side Medical Center around 4 p.m. on January 23, 1989, in Marion's blue 1984 Chevette. The car had no front license plate, but it did have a back license plate that read "CBK 908." Ms. Marion, who had known defendant for four months, was romantically involved with him.

After making two stops, Marion and defendant went to 79th Street and Jeffrey Boulevard in Chicago so that defendant could buy cocaine. They then went to defendant's mother's house, where defendant smoked the cocaine. According to Marion, defendant purchased and smoked cocaine at least two more times that evening. Around 11 p.m., Marion asked defendant to drive her home.

On the way to Marion's home, defendant stopped at the Midway Motor Inn. Marion waited in the car for five minutes while defendant went inside to use a public telephone. As defendant walked out of the motel, Marion saw a young white guy trying to stop him. Defendant, who was moving fast, brushed by the man. Marion saw people running and looking out the windows.

As defendant drove away, Marion asked him what had happened. He said that the people in the motel were acting crazy and would not let him use the telephone. According to Marion, defendant drove away fast, seemed nervous, and kept looking in the rearview mirror. Instead of driving to Marion's house as planned, defendant drove to his house.

Patrick Donahue, a security guard, testified that about 10 p.m. on January 23, 1989, he went to the Midway Motor Inn to visit his girl friend, who was the bartender. The victim, whom Donahue knew, was sitting at the bar having a drink. About one-half hour later, the victim, who did not appear drunk, left the bar and walked toward the lobby. Immediately afterwards, Donahue saw another bar patron, Adrian Spaargaren, leave the bar in the same direction as the victim.

When Donahue heard yelling a short time later, he went toward the lobby. There, Donahue saw a well-dressed African-American man, wearing a brown knee-length coat, walk by. At the same time, Spaargaren came out of another hallway and told Donahue to get the man's license plate number. Donahue followed the man out the motel's front door.

Donahue stated that defendant got into the driver's side of a car parked outside the motel. A heavy-set African-American woman wearing a red coat was sitting on the passenger side. As defendant pulled away, Donahue noticed that there were no front license plates on the car, but the back license plate read "CBK 908." When Donahue returned to the lobby, the victim was sitting in a chair. Donahue tried to put pressure on the abdominal wound until the police and an ambulance arrived a short time later.

The next day, Donahue went to the police station to view a lineup. He tentatively identified defendant as the man he saw leaving the motel the night before. The police then took Donahue to a parking lot filled with cars and asked if he could point out the car he saw the man driving. Donahue positively identified Marion's car. At trial, Donahue testified that defendant was the man he picked out of the lineup, but he was not sure if he was the man he saw at the motel.

Spaargaren, a 45-year-old factory worker, testified that he was at the Midway Motor Inn on the evening of January 23, 1989. He arrived at 8 p.m. and had five drinks, but felt fine. Spaargaren stated that the victim arrived at the bar around 11 p.m., stayed 15 minutes, had one drink, and then left. A few minutes later, Spaargaren left, walked through the lobby, and into the hallway leading to the motel's side door. There, he saw the victim leaning against the wall, bent over, holding his stomach.

Spaargaren saw a well-dressed African-American man, whom he identified as defendant, standing next to the victim, talking to him. Defendant was wearing a long brown trench coat. Thinking that the victim was having a heart attack, Spaargaren asked defendant if the victim was okay. When defendant looked at Spaargaren without saying anything, Spaargaren became suspicious and told defendant to get away from the victim. Defendant, who was searching the victim's clothes, snapped, "Get the fuck out of my way."

As defendant walked away, the victim fell to his knees. Defendant, who had his hands in his pocket, passed within two feet of Spaargaren. Spaargaren yelled to Donahue to get defendant's license plates, then helped the victim to a chair. The next day, Spaargaren identified defendant in a lineup.

Andrew Kacprowski, who was working at the motel's front desk between 10 p.m. and 2 a.m. on the night of the stabbing, testified that defendant came into the motel that night and asked for the washroom. Kacprowski stated that defendant was well-dressed and was wearing a full-length cashmere coat. Five minutes later, defend-

ant returned from the washroom and asked Kacprowski where the telephones were located. Kacprowski directed defendant.

About 10 to 15 minutes later, Spaargaren told Kacprowski to call the police because there was a fight. When Kacprowski went to the lobby, he saw defendant casually walk from the hallway and out the door. The victim, who was holding his stomach, walked out of the hallway. The next day, Kacprowski identified defendant in a lineup.

Patricia McLaughlin, who was the front desk clerk at the time of the stabbing, testified that defendant came in the front entrance and asked for the restroom. Shortly afterwards, he walked by the front desk and toward the phones. The remainder of McLaughlin's testimony was substantially the same as Kacprowski's, including that she identified defendant in a lineup the next day.

Detective James Brennan, a Chicago police officer, testified that he and his partner, Detective Thomas Brankin, investigated the stabbing. When Brennan arrived at the Midway Motor Inn, he interviewed witnesses and investigated the scene, but found no evidence. He got the license plate number from the motel manager and traced it to Patricia Marion of 4733 West Congress Street in Chicago. After questioning Marion, the officers went to 73rd and Winchester Streets, where defendant lived. About 20 minutes later, they saw defendant come out of the building and arrested him.

The next day, Detective Brankin supervised the lineup. He testified that four witnesses, who did not confer with the others during their viewing, independently identified defendant.

Grazina Smith, the victim's daughter, testified that her father, who lived in Belleville, Illinois, was visiting her on January 23, 1989. After dinner and two drinks, the victim left his daughter's house between 10:15 and 10:30 p.m. to return to the Midway Motor Inn, where he was staying with his sister. After the stabbing, the victim was in the hospital for six weeks until he died on March 6, 1989.

After her father died, Smith received his personal belongings from the hospital and the motel. His watch, which he was wearing when he left her house on January 23, 1989, was missing.

Dr. Robert Aki, who was the trauma surgeon on duty when the victim was brought into Christ Hospital's emergency room, testified that the victim had a stab wound that penetrated his colon and liver, causing extensive bleeding. In Dr. Aki's opinion, the victim would have bled to death shortly after the stabbing without the immediate operation. Dr. Aki operated several more times as a result of an infection that was disintegrating the victim's abdominal wall.

Dr. Margarita Arruza, who performed the autopsy, testified that victim had a large abdominal wound that had been operated on several times. The stab wound went through the victim's liver and colon. In Dr. Arruza's opinion, death was caused by the stab wound.

■ On appeal, defendant asserts that the trial court erred in denying his motion *in limine* to preclude the State from offering evidence of other crimes. Defendant complained of Spaargaren's testimony that he saw defendant going through the victim's pockets. In response, the State asserts that the evidence of defendant going through the victim's pockets was part of the *res gestae* of the crime and was admissible to establish a motive, which was attempted robbery so that defendant could get more cocaine.

Evidence of other crimes is inadmissible if relevant merely to establish the defendant's propensity to commit crime. (*People v. McKibbins* (1983), 96 Ill. 2d 176, 182, 449 N.E.2d 821; *People v. Lopez* (1992), 228 Ill. App. 3d 1061, 1078, 593 N.E.2d 647.) If, however, other crimes evidence is relevant to motive, it is admissible. (*McKibbins*, 96 Ill. 2d at 182; *Lopez*, 228 Ill. App. 3d at 1078.) Furthermore, it is within the sound discretion of the trial court to determine whether the probative value of such other crimes evidence outweighs its prejudicial impact. *Lopez*, 228 Ill. App. 3d at 1078; *People v. Brown* (1991), 214 Ill. App. 3d 836, 844-45, 574 N.E.2d 190.

The trial court did not err in allowing Spaargaren's testimony that defendant was searching the victim's pockets. The evidence, which went to motive, was part of defendant's continuing course of conduct.

■ Next, defendant asserts that the trial court violated Supreme Court Rule 412 (134 Ill. 2d R. 412) when it admitted the State's prejudicial evidence of a missing watch. Defendant contends that the State's failure to inform the defense prior to trial of a key piece of evidence prejudiced him. The State never mentioned in any of the discovery materials that the victim religiously wore a watch that was not found after the stabbing. Defendant learned of the watch's existence on the day of trial during the hearing on his motion *in limine*. Defendant argues that the evidence created the illusion of a robbery or attempted armed robbery that was never charged, thus prejudicing him.

Furthermore, defendant maintains that he was prejudiced when the trial court denied him any opportunity to prepare against the introduction of this evidence. Immediately after overruling his objections to allowing the missing watch's earlier existence into evidence, the trial court ordered the jury into the courtroom. In addition,

defendant insists that the State's excessive use of the evidence of the missing watch was highly prejudicial.

In response, the State asserts that it was not required to include in its discovery any testimony concerning the watch because it was not recovered and not introduced into evidence. The State contends that Rule 412 requires only that physical evidence, lists of potential witnesses, statements, transcripts, and evidence favorable to defendant are subject to discovery. Since Smith, who testified about the watch, was included as a potential witness in the State's answer to discovery, the State maintains that defendant was fully informed and free to interview Smith about her prospective testimony.

The purpose of the discovery rule is to provide the defense protection against surprise and unfairness. (*People v. Washington* (1989), 182 Ill. App. 3d 168, 174, 537 N.E.2d 1354.) Noncompliance with the rules of discovery, however, will not be reversible error absent a showing of prejudice. (*Washington*, 182 Ill. App. 3d at 174.) The closer the evidence, the stronger is the case for excluding the statement or declaring a mistrial. The strength of the undisclosed evidence, the likelihood that prior notice could have helped the defense discredit the evidence, the feasibility of continuance rather than a more drastic sanction, and the willfulness of the State in failing to disclose are also factors which must be considered. (*People v. Weaver* (1982), 92 Ill. 2d 545, 559, 442 N.E.2d 255.) The judgment of the trial judge is given great weight. A reviewing court will find an abuse of discretion only when a defendant is prejudiced by the discovery violation and the trial court fails to eliminate the prejudice. *Weaver*, 92 Ill. 2d at 560.

Rule 412 provides that the State must disclose to defense counsel any "tangible objects which the prosecuting attorney intends to use in the hearing or trial." (134 Ill. 2d R. 412(a)(v).) Since the watch was not used by the State as tangible evidence during the trial and the State had properly disclosed the name of the potential witness who testified about the watch, the nondisclosure was not improper. Nevertheless, using the nonexistence of a tangible object at trial to prove motive appears to subvert the purpose of the discovery rule. At a minimum, defense counsel should have been allowed time to prepare against the evidence. Even without the evidence of the missing watch, however, evidence of defendant's guilt was overwhelming. Thus, any discovery error committed was harmless.

■ Next, defendant asserts that the trial court erred in ordering the jury to disregard a material witness' direct response to a defense question on cross-examination. Defendant waived this issue. Although

he objected at trial, he did not include this issue in his post-trial motion. *People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124.

■ Next, defendant asserts that the trial court's actions created a cumulative error. In addition to the asserted errors already discussed, defendant argues that the trial court refused to allow any defense objections and granted all State motions and objections. Defendant maintains that the trial court's actions sent a prejudicial message to the jury that the State should be given more weight than the defense. A careful reading of the record shows that defendant's argument is groundless.

■ Next, defendant asserts that the State did not prove him guilty beyond a reasonable doubt by clear and convincing evidence. Defendant argues that the evidence reveals an unclear, unconvincing, confusing, and fully circumstantial presentation of testimony. We reject this argument because the evidence was sufficient to convict defendant beyond a reasonably doubt of first degree murder.

When a conviction is based solely on circumstantial evidence, it will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.) No longer is the State required to exclude every reasonable hypothesis of innocence. *People v. Eyler* (1989), 133 Ill. 2d 173, 191, 549 N.E.2d 268; *People v. Pintos* (1989), 133 Ill. 2d 286, 291, 549 N.E.2d 344.

■ Finally, defendant asserts that the trial court abused its discretion by imposing an excessive sentence. Defendant argues that the trial court decided to sentence him to an extended term before hearing any mitigation evidence.

In response, the State asserts that the trial court properly sentenced defendant within the statutory limits. The State maintains that the trial court did not sentence defendant to an extended term even though it found him to be eligible for an extended term after the aggravation evidence was presented.

The trial court is best situated to tailor a sentence to the needs of the case by balancing the appropriate factors in imposing the sentence. (*People v. Hicks* (1984), 101 Ill. 2d 366, 375, 462 N.E.2d 473; *Lopez*, 228 Ill. App. 3d at 1077.) Where the sentence imposed is within the statutory limits, a reviewing court will not exercise its power to reduce the sentence absent a finding that the trial court abused its discretion. *People v. Cabrera* (1987), 116 Ill. 2d 474, 493-94, 508 N.E.2d 708.

Defendant was convicted of first degree murder (Ill. Rev. Stat. 1989, ch. 38, par. 9—1(a)(1)), which carries a sentence of 20 to 60

years' imprisonment (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)). The trial court stated that defendant qualified for an extended term after hearing the aggravation evidence, then asked for mitigation. After evidence in mitigation and a statement by defendant, the trial court sentenced defendant to 60 years' imprisonment, which is within the statutory limits for first degree murder. The trial court commented on defendant's lack of credibility, demeanor, general moral character, employment, family, habits, and the stimuli which motivated his conduct. Thus, the sentence was not an abuse of discretion.

The circuit court judgment is affirmed.

Affirmed.

TULLY, P.J., and GREIMAN, J., concur.