SECOND DIVISION

No. 1-07-0528

| | | |
|---|---|---|
| In re Julio C., | ) | Appeal from the |
| | ) | Circuit Court of |
| (THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Cook County |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | No. 05 JD 830 |
| v. | ) | |
| | ) | |
| JULIO C., | ) | Honorable |
| | ) | Michael J. Howlett, Jr., |
| Respondent-Appellee.) | ) | Judge Presiding. |

JUSTICE KARNEZIS delivered the opinion of the court:

The State appeals from an order of the circuit court dismissing the charges against respondent Julio C., as a sanction for the State's discovery violation. The two issues before this court are: (1) whether the State committed a discovery violation; and (2) whether the trial court's dismissal of the State's petition for adjudication of wardship of respondent was an abuse of discretion. We affirm the court's finding of a discovery violation, but reverse the court's sanction of dismissing the charges against

respondent.

The petition for adjudication of wardship filed against respondent was the result of a car chase and shooting in which a teenager, Herman Medina, was killed. The following facts are taken from respondent's motion to dismiss the petition.

On February 11, 2005, at 6755 South Hamlin Avenue in Chicago, at about 6 p.m., three teenage boys robbed 14-year old Roberto Garcia, Jr. of a gold necklace and cell phone. Respondent did not participate in the robbery. The teenage boys fled in a white Ford Explorer.[1] Garcia, Jr. reported the robbery to the Chicago police department and to his father Robert Garcia, a detective with the Chicago police department. Garcia contacted his brother Alfredo Garcia, a Cook County Sheriff, and Officer Michael Bocardo, a gang specialist. The officers, who were dressed in plain clothes and were off-duty at the time, drove around in an undercover car, a red Ford Explorer, to look for the boys that robbed Garcia, Jr.

Later that evening, respondent was walking home when he saw his friends in a white Ford Explorer. Herman Medina was driving and Eric Uribe was in the front seat. They offered him a ride home and respondent got in the back seat of the car.

Shortly after 8 p.m., Garcia, Jr. called his father to tell him that the white Explorer that had been involved in the robbery was parked near 68th Street and Hamlin Avenue. About ten minutes later, the three officers saw the white Explorer and immediately

---

[1] The record indicates that the white Explorer had been stolen.

2

made a u-turn. According to the officers, they pulled up behind the boys' car and identified themselves as police officers and showed their badges. However, respondent stated that the men did not identify themselves or show their badges. The officers' car was not equipped with emergency lights or a siren and did not have any police markings. Upon seeing the officers' car approach them and believing the occupants to be "gang bangers," Medina drove away. The officers' car began chasing the boys' car and ramming or bumping it. Several gunshots were allegedly fired from the boys' car, and a gun that was thrown out the window of their car was subsequently recovered. Detective Garcia also shot at the boys' car during the chase.

As the white Explorer approached West 67th Place and South Lawndale Avenue, the boys saw Chicago police squad cars approaching them. Medina stopped the car and put it in park. Numerous police officers surrounded the car with their guns drawn. According to several officers, they saw the boys move their arms and legs and saw the driver holding a long, dark object that they believed to be a gun.[2] Officer Bocardo and several other officers shot at the boys. At least 26 bullets were fired at the car at close range. Medina was shot in the neck and died at the scene. Uribe was shot twice, but recovered. Respondent was not shot. According to respondent, one of the uniformed officers "dragged" him out of the car and at least five different officers took turns kicking, punching and hitting him. An affidavit by Mayra Ruiz, who resided in the house

---

[2] The object turned out to be a tire iron.

next to the street where the incident occurred, indicated that she witnessed respondent's beating.

Police officers who processed the scene took over 90 photographs. The photographs included close-ups of the white Explorer and specifically the damage to the rear bumper of the car. The photographs of the officers' car showed the damage to the front bumper and white scrapes or paint marks on the front bumper. Police officers also videotaped the scene.

On the date of the incident, the Office of Professional Standards (OPS) began an investigation into the car chase and shooting. An OPS investigator examined the officers' car and noted that the front bumper was damaged and white scrape marks were on the bumper. There was also damage to the front license plate. An investigator took samples of the white scrape marks to determine whether the marks could have been white paint from the white Explorer. Investigators also examined the white Explorer and took several paint samples from its rear bumper. The samples were sent to the Illinois State Police Forensic Science Center in Chicago on March 3, 2005. The officers who were involved in the chase, were subsequently interviewed and denied ramming the boys' car. Officer Bocardo stated that any damage to the front of the officers' car had been there prior to the incident. The officers further stated that they shot at the white Explorer only after they were fired upon first and that the shots were fired from the rear seat of the boys' car. The officers also denied beating respondent.

On February 14, 2005, the State filed a petition for adjudication of wardship for

4

respondent, who was then 14-years old. The amended petition charged him with one count of first degree murder based on the theory of felony murder for the death of Medina, three counts of attempt first degree murder of the officers and three counts of aggravated discharge of a firearm with the officers as the victims.

That same day, respondent filed a general "form" motion for discovery, which did not specifically refer to the white Explorer. The motion asked for "[e]ach book, paper, document, photograph, report, or tangible object which was obtained from or belongs to the respondent or any co-respondent." The motion also asked for "[a]ny material or information which tends to negate the guilt or delinquency of the respondent as to the offense charged or would tend to reduce the respondent's punishment therefore."

The State responded with a general "form" answer and asserted in paragraph 2 that "all items set forth in [the police reports, transcripts, medical reports and other documents] may be used at trial as physical evidence and will be available for inspection at a reasonable date, time and place upon request."

On April 12, 2005, the police released the white Explorer, without notifying respondent. The car was transported to an automobile auction in Hammond, Indiana. In November 2005, NTC Auto Sales purchased the car and transported it to California. NTC subsequently sold it to an individual who lived in Mexico.

A report from a forensic scientist at the Forensic Science Center dated May 18, 2005, indicated that the paint samples taken from the officers' car and the white Explorer "revealed some similarities and unaccountable differences" and it could not be

5

determined whether the paint samples originated from the same source. The report also noted that the white paint shavings taken from the officers' car were insufficient for complete comparison.

On November 29, 2005, new counsel for respondent filed a second discovery request, specifically asking "the prosecution [to] preserve all automobiles involved in this case, including but not limited to police vehicles and the vehicle occupied by the minor respondent at or around the time of arrest, for inspection by the defense and defense experts."

On May 11, 2006, respondent filed a motion for a court order granting access to and inspection of both the white Explorer and the officers' car. The motion alleged that the vehicles were critical to respondent's defense because there may be evidence of paint from the officers' car on the boys' car that would prove that the officers' car "rammed" the boys' car. On June 13, 2006, the trial court granted respondent's motion.

Thereafter, upon learning that the white Explorer was no longer in police custody, respondent filed a motion to dismiss the amended petition on December 14, 2006. The motion alleged that the State committed a discovery violation by failing to preserve the white Explorer. Respondent argued that the discovery violation violated his due process rights, the discovery rules and section 116-4 of the Code of Criminal Procedure (725 ILCS 5/116-4 (West 2004)), which requires a law enforcement agency to preserve any physical evidence that is reasonably likely to contain forensic evidence. Respondent argued that the only proper remedy for the State's discovery

6

violation was to dismiss the amended petition for adjudication of wardship.

The trial court held a hearing on respondent's motion to dismiss. After the hearing, the court first noted that because there was no evidence of bad faith by the State, no due process violation had occurred. The court then determined that a discovery violation had occurred. The court noted that both respondent's discovery motion and the State's answer were general motions that "are routinely filed in this court." Nevertheless, the court found that the State's answer "that all items set forth in [the police reports and other documents] may be used at trial as physical evidence and will be available for inspection," could reasonably be relied upon by the court and respondent as a commitment from the State to preserve the boys' car. The court further stated that at the very least, the discovery process required the State to give respondent notice that the car would be released, and the failure to do so was a violation of Supreme Court Rule 412 (188 Ill. 2d R. 412). The court then sought to determine an appropriate sanction. The court stated that from the defense's perspective, the white Explorer was significant because the defense could potentially use it to show that the two cars had come into contact with one another during the chase. The court specifically stated, "I find that not having the car is of enough significance, and their inability to examine the car is of enough significance that it rises to the level not only of a discovery violation, but as a sanctionable one." The court further stated, "consequently, having found that there is a discovery violation, having found that it is of significance to the defense, having not the ability to substitute my

7

mind for that of the creative defendant's defense lawyers in the case, I can only speculate what it is they would have been able to do with the car, and that is no way to proceed in a criminal trial, or a criminal-like trial." The court further found that because each of the charges in the amended petition for adjudication was affected by the discovery violation, the appropriate sanction was to dismiss the petition. The State now appeals.

On appeal, the State contends that no discovery violation occurred and, even if there was a discovery violation, the trial court abused its discretion in dismissing the charges against respondent.

Discovery violation

Illinois Supreme Court Rule 412(g) provides in part:

"[u]pon defense counsel's request and designation of material or information which would be discoverable if in the possession or control of the State, and which is in the possession or control of other governmental personnel, the State shall use diligent good-faith efforts to cause such material to be made available to defense counsel." 188 Ill. 2d R. 412(g).

When the facts giving rise to the alleged discovery violation are not in dispute, we review the trial court's finding of a discovery violation *de novo*. People v. Hood, 213 Ill. 2d 244, 256 (2004).

Here, in order to determine whether there was a discovery violation, we must examine respondent's first discovery motion and the State's answer to the motion.

8

Respondent's motion, as stated above, was a general motion, which did not specifically ask to inspect either of the vehicles involved in the incident. The State's general answer however, asserted that "all items set forth in [the police reports, transcripts, medical reports and other documents] may be used at trial as physical evidence and will be available for inspection at a reasonable date, time and place upon request." The trial court found that it was reasonable for defense counsel to believe that the State would preserve the white Explorer based on the State's answer and the failure to give notice to defense counsel that the car would be released was a discovery violation. We agree. The State's answer that all items set forth in the police reports, which unquestionably included the white Explorer, would be available for inspection upon request, obligated the State to do just that, preserve all items set forth in the police reports. If the State did not intend to preserve the white Explorer, then their answer should have specifically noted only those items it intended to preserve. Only then, would defense counsel have been on notice that the State did not intend to preserve the white Explorer. From the State's answer, it was reasonable for defense counsel to believe that the white Explorer would be preserved. We uphold the trial court's determination of a discovery violation.

We respectfully suggest to the parties that filing a "general" discovery motion and answer in this case was inappropriate. It is incumbent upon the parties to tailor their discovery to the specific facts of the case. The parties should have considered the seriousness of the crime charged and the potential consequences of being found

guilty of the crime before determining whether a "form" document was sufficient.

Discovery Sanction

We now consider whether the trial court's sanction was proper.

Illinois Supreme Court Rule 415(g)(i) provides in part:

"[i]f at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other order as it deems just under the circumstances."  134 Ill. 2d R. 415(g)(i).

In determining an appropriate sanction, the trial court considered the value of the evidence that was lost and concluded that the white Explorer was a "significant piece of evidence."  The court stated that it considered alternative sanctions other than dismissal but found that "[b]ecause of the issues involved, any sanction that would limit the opportunity of the pursuing officers to tell their full story or to limit the State in countering any evidence or opinion that the Defense might offer or testimony they might offer, where I'd have [to] put limits on the ability to respond to those things, I just find that to be more cumbersome than justice allows."

The appropriate sanction is a decision left to the discretion of the trial court and its judgment is entitled to great weight.  People v. Newberry, 166 Ill. 2d 310, 318

(1995). Dismissal of the charges as a discovery sanction is not required in every situation in which evidence is destroyed. People v. Sykes, 341 Ill. App. 3d 950, 972 (2003). The sanction must be proportionate to the magnitude of the violation. People v. Koutsakis, 255 Ill. App. 3d 306, 314 (1993). We note that the trial court may dismiss an indictment when the failure to do so will result in a deprivation of due process or in a miscarriage of justice. Newberry, 166 Ill. 2d at 314. Where the evidence is only "potentially useful" the failure to preserve the evidence does not constitute a denial of due process unless a defendant can show bad faith on the part of the police. Arizona v. Youngblood, 488 U. S. 51, 58, 102 L. Ed. 2d 281, 289, 109 S. Ct. 333, 337 (1988), See also Illinois v. Fisher, 540 U. S. 544, 549, 157 L. Ed. 2d 1060, 124 S. Ct. 1200, 1203 (2004)(reaffirming bad faith requirement to establish due process violation).

Defendant relies on People v. Newberry, 166 Ill. 2d 310 (1995). In Newberry, police officers arrested the defendant and seized a substance from him they believed to be cocaine. A field test initially indicated that the substance was not cocaine. A subsequent laboratory test indicated that the substance tested positive for cocaine and the defendant was charged with unlawful possession of a controlled substance. Defense counsel filed a discovery motion requesting to examine the substance, however, the substance was inadvertently destroyed. In addition to finding a due process violation, the court found that dismissal of the charges was also appropriate as a discovery sanction pursuant to Rule 415(g)(i), because the substance was "essential to and determinative of the outcome of the case." Newberry, 166 Ill. 2d at 291, 292.

11

The court explained that the defendant could neither be convicted of the drug possession charges without proof of the content of the substance, nor did the defendant have any realistic hope of exonerating himself without the opportunity to have the substance examined by his own experts. Newberry, 166 Ill. 2d at 291.

We find Newberry distinguishable. Here, the white Explorer would be only potentially useful to the defense. At best, with further testing performed, respondent might be able to establish that the officers' car and the white Explorer came into contact with one another during the chase. We agree with respondent that this potential evidence could be used to severely impeach the police officers' testimony. However, the car is not exculpatory evidence as in Newberry, where the defendant could not be convicted of drug possession charges absent proof of the content of the disputed substance. Therefore, we cannot find that the white Explorer was "essential to and determinative of the outcome of the case" as in Newberry. Additionally, because there was no evidence of bad faith, it was improper to dismiss the charges against respondent based on the two instances set forth in Newberry, that the failure to do so would result in a deprivation of due process or in a miscarriage of justice. It would have been within the trial court's discretion to impose a sanction short of dismissal, however, it was an abuse of discretion for the trial court to dismiss the charges in this instance as a sanction for the State's discovery violation.

We note that the trial court designated this proceeding as an extended juvenile jurisdiction proceeding for which the respondent has a right to a jury trial pursuant to

12

1-07-0528

section 5-810(3) of the Juvenile Court Act of 1987 (705 ILCS 405/5-810(3) (West 2006)). Upon remand to the trial court, we note that when the case proceeds to trial, the trial court could give a limiting instruction based on Illinois Pattern Jury Instruction, Civil, No. 5.01 (2008 ed.), which states generally that the failure of a party to produce evidence within its control creates a presumption that the evidence if produced would have been adverse to that party. Such an instruction was found proper in People v. Sykes, 341 Ill. App. 3d 950, 972 (2003), as a sanction for the State's discovery violation.

Accordingly, we affirm the trial court's determination of a discovery violation, but reverse the sanction dismissing the petition for adjudication against respondent. We remand the cause to the trial court for further proceedings consistent with this opinion.

Affirmed in part; reversed in part; cause remanded.

CUNNINGHAM, J., concurs.

1-07-0528

     JUSTICE QUINN, specially concurring.

     I completely concur with the majority's holding. I write separately to further comment on the problem illustrated by this case. The defendant was charged with the murder of Herman Medina based on the theory of felony murder. The underlying felony was the attempted first degree murder of three police officers. When the State filed their answer to discovery, they filed a one-page form answer consisting of nine sentences. The respondent's name and the case number of the petition for adjudication of wardship were written in by hand. No assistant state's attorney signed the form.

     It is well settled that the purpose of the discovery rules is to provide the defense protection against surprise and unfairness. People v. King, 248 Ill. App. 3d 180, 186 (1993). However, the State also receives significant benefits from answering discovery. Writing a discovery answer provides an opportunity for a prosecutor to review the police reports, any forensic reports, evidence receipts, and transcripts of any preliminary hearing or grand jury proceeding. The prosecutor can then make a decision early in the prosecution as to what evidence is available, what evidence should be retained and what further evidence needs to be obtained.

     The instant case was not one of the tens of thousands of narcotics cases arising from street dealing which the State chooses to file every year. We hold that in this case the respondent had a right to rely on the State's assurance that "all items set forth in [the police reports, transcripts, medical reports and other documents] may be used at

14

1-07-0528

trial as physical evidence and will be available for inspection at a reasonable date, time and place upon request." I believe that the victims in this case were also entitled to the filing of an answer to discovery which demonstrated that someone took the time to read the investigative file. My concern in this regard is enhanced by the fact that, while Northwestern University School of Law's Bluhm Legal Clinic spent a great deal of time and effort in representing the respondent, including the filing of a voluminous motion to dismiss, the State did not see fit to file a written response in the trial court. Consequently, the trial judge was very much left to his own devices in deciding whether a discovery violation occurred and also in tailoring a remedy. Taking all of this into consideration, however, leads me to the same conclusion as the majority with whom I concur.

1-07-0528

| | | |
|---|---|---|
| In re Julio C., | ) | Appeal from the |
| | ) | Circuit Court of |
| (THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Cook County |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | No. 05 JD 830 |
| v. | ) | |
| | ) | |
| JULIO C., | ) | Honorable |
| | ) | Michael J. Howlett, Jr., |
| Respondent-Appellee.) | ) | Judge Presiding. |

No. 1-07-0528

Appellate Court of Illinois

First District, Second Division

October 28, 2008

JUSTICE KARNEZIS delivered the opinion of the court.

CUNNINGHAM, J., concurs, QUINN, J., specially concurring.

Appeal from the Circuit Court of Cook County.

The Honorable Michael J. Howlett, Jr., Judge Presiding.

For PETITIONER-APPELLANT, Richard A. Devine, State's Attorney of Cook County (James E. Fitzgerald, Michelle Katz and Annette Gonzalez Thornton, Assistant State's

16

1-07-0528

Attorneys, of counsel)

For RESPONDENT-APPELLANT, Bluhm Legal Clinic, Northwestern University School of Law (Alison R. Flaum, Steven A. Drizin, of counsel)