2019 IL App (3d) 160161

Opinion filed August 12, 2019

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2019

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Rock Island County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-16-0161 Circuit No. 12-DT-156 |
| | ) | |
| JUSTIN M. BLACKWOOD, | ) ) | Honorable William S. McNeal, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE CARTER delivered the judgment of the court, with opinion.
Justices McDade and Wright concurred in the judgment and opinion.

**OPINION**

¶ 1     Following a jury trial, defendant Justin M. Blackwood was found guilty of misdemeanor driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2012)). The Rock Island County circuit court sentenced defendant to 14 days in jail and 12 months of probation. Defendant appealed, arguing that his attorney provided ineffective assistance of counsel for failing to request Illinois Pattern Jury Instructions, Civil, No. 5.01 (2011) (hereinafter IPI Civil (2011)), under which jurors would be instructed that an adverse inference may be drawn against the State regarding defendant's performance on field sobriety tests where the arresting officer

administered field sobriety testing to defendant outside of the view of the squad car's operable dashboard video camera. We affirm the judgment of the circuit court.

¶ 2                                                     FACTS

¶ 3        Defendant was charged with DUI (625 ILCS 5/11-501(a)(2) (West 2012)) and possession of cannabis (720 ILCS 550/4 (West 2012)). At defendant's jury trial, Officer Nick Wade of the City of Moline Police Department testified that at 3 a.m. on March 2, 2012, defendant drove by him. Wade and defendant made eye contact as they passed each other, and then defendant immediately made a left turn into a gas station. Wade thought defendant's abrupt turn was "a little suspicious," so he stopped on the side of the road and waited for defendant to pull out of the gas station. Defendant pulled out of the gas station and then made a right turn on 16th Avenue without signaling. Wade followed defendant's vehicle, intending to initiate a traffic stop because defendant had failed to signal the turn. As Wade turned onto 16th Avenue, defendant abruptly turned left into an alley without signaling and parked on a concrete pad that served as a private driveway. Wade testified, "[i]t seemed like the turn was unplanned" and described the turn as a "fast turn" as if defendant was not sure where he was going.

¶ 4        Wade initiated a traffic stop of defendant's vehicle for failure to signal a turn and parked behind defendant's vehicle at a 45-degree angle to block in defendant's vehicle. Wade was approached by the resident of the home, who informed Wade that he did not know defendant's car or the reason that defendant had parked in his driveway. Wade smelled alcohol on defendant's breath immediately upon contact with defendant. There were three passengers in defendant's vehicle. Defendant had red, watery eyes and mumbled and slurred his speech. Defendant had no explanation for parking in the driveway of a stranger. Defendant did not have any trouble providing his driver's license or getting out of his car. When Wade administered

- 2 -

field sobriety tests to defendant, defendant showed signs that he had been consuming alcohol. Defendant's three passengers also appeared intoxicated. Wade believed defendant was intoxicated and unfit to drive because it was bar-closing time, defendant was driving a car full of people, defendant had driven as if he did not know where he was going, defendant had appeared to have attempted to avoid Wade's police vehicle when he pulled into a random driveway with no explanation for doing so, there was an odor of alcohol, defendant's eyes were red and watery, defendant's speech was slurred, and defendant showed signs of impairment on the field sobriety testing. Based on his training and experience, Wade opined that defendant was intoxicated and unfit to drive. Wade placed defendant under arrest.

¶ 5        Wade transported defendant to the police department for further DUI processing. After a 20-minute observation period, defendant refused to take a breath test.

¶ 6        Wade's police car was equipped with video recording equipment, and the traffic stop of defendant's vehicle had been recorded. Wade testified that the video showed him making the traffic stop and showed him having defendant exit the car. The testing was not conducted in front of Wade's vehicle so that it could be captured on the video. Wade explained that the reason the field sobriety tests were not conducted in front of the dashboard camera was because Wade had parked his squad car in a way to block in defendant's vehicle and Wade and defendant went off camera to a "flat area" for the field sobriety testing.

¶ 7        On cross-examination, Wade testified that that he did not reposition his squad car in order to capture the field sobriety testing on video camera because there were three other occupants in the vehicle, "not all of which were being very cooperative with [the officers], and one of [whom] ha[d] a very violent history with [police]." Wade wanted to keep defendant's car blocked in "so nobody could get in it and leave in it." Wade indicated that the main reason he did not reposition

his vehicle was out of concern for "an officer-safety and a public safety issue." In addition, the alleyway was "tight" and other officers had arrived on scene. Wade testified that he would have moved his squad car "if it was a reasonable thing to do." On redirect, the prosecutor asked, "how overwhelming was the smell of the alcoholic beverage?" Wade responded, "very strong."

¶ 8        Officer Eric Wells testified that he arrived at the traffic stop to back up Wade. Two other officers also arrived at the traffic stop. Wells began to speak with defendant's passengers. Wells testified that the passengers all "seemed very intoxicated." The passengers had slurred speech, smelled of alcohol, and staggered a little. After defendant was arrested, Wells conducted a tow inventory search of defendant's vehicle and found a plastic bag containing cannabis under the driver's seat.

¶ 9        In closing arguments, defendant's attorney argued, in part:

"There is a video on the officer's squad car. Now, that was not helpful in any way because it did not show these field sobriety tests. Now, if that had been provided, would that show you objectively what happened? Yes. We don't have that today."

¶ 10        The jury found defendant guilty of driving under the influence of alcohol. The jury found defendant not guilty of possession of cannabis.

¶ 11        Defendant filed a posttrial motion "for a verdict of not guilty" or in the alternative for a new trial, arguing, in part, that the evidence was insufficient for the jury to find him guilty of DUI beyond a reasonable doubt because Wade's dashboard video camera, although working at the time of the stop, "did not capture any images of the field sobriety tests." At the hearing on the motion, defendant's attorney argued that, even though a video existed, the video camera was

- 4 -

"not utilized in the proper way," so that "a shadow was cast over all of the State's evidence." Defendant's attorney stated:

> "[W]e're not talking about a discovery issue here, we're not talking about an admissibility issue, we're talking about an argument that goes to the weight and the thrust of the evidence rather than its admissibility. *** [Wade] didn't want to move his car because he was trying to keep the defendant's car where it was. However, Judge, if you recall the facts of the case, at this time [defendant] had already been removed from the vehicle. There was no one in the driver's seat, and I believe that the other occupants of the car had already been removed as well. It would have been easy for this officer to maneuver his car in a way that permitted him to keep this car where it was while still being able to get video of the field sobriety tests. And, Judge, that doesn't even touch on whether that need that this officer believed was even backed up by the facts. There was no one there ready to get into the car. Judge, as I said, that casts a shadow over the entirety of the State's evidence presented in this case."

¶ 12   In ruling on defendant's posttrial motion, the trial court noted that, in addition to defendant being out of the vehicle and Wade having an opportunity to reposition his squad car, other officers were present and "could have taken the time and repositioned the squad car so that the field sobriety tests could have been on video." The trial court stated:

> "They easily could have [repositioned the squad car]. They chose not to. And I'm sure the jury took that into consideration in addition to the officer's explanation as to why he did not reposition his squad car. So it could have been

taken into consideration by the jury the fact that the officer could have but didn't reposition his squad car."

¶ 13    The trial court denied defendant's posttrial motion, noting that there was no basis to overturn the jury's verdict. The trial court sentenced defendant to 14 days in jail and 12 months of probation. Defendant appealed.

¶ 14                                      ANALYSIS

¶ 15    On appeal, defendant argues that his trial counsel was ineffective for failing to request that the jury be given an adverse inference jury instruction in accordance with IPI Civil (2011) No. 5.01 because Officer Wade failed to record the field sobriety tests. Defendant argues that, where a police encounter was negligently conducted so that no recording was created, the practical effect is that the legislature's intent behind passing a directive to police to record such encounters is wholly frustrated by the missing recording and, therefore, a negative inference instruction is appropriate. Defendant contends his counsel's performance was deficient because counsel failed to tender a jury instruction that would inform the jury that it could infer that a video recording would have been adverse to the testimony of Officer Wade regarding defendant's performance on the field sobriety tests.

¶ 16    The State argues that defendant cannot establish that his trial counsel's performance fell below an objective standard of reasonableness. The State contends that there is no case law to support defendant's argument that the civil adverse inference jury instruction referenced by defendant would have been proper in this case based on the officer's failure to record the field sobriety tests and that giving such an instruction in a criminal case may infringe upon a defendant's presumption of innocence and right not to present any evidence. The State also

- 6 -

argues that even if the instruction had been given there is not a reasonable probability that the outcome of defendant's jury trial would have been different.

¶ 17    In reply, defendant clarifies that he "is not arguing that counsel was ineffective for failing to request discovery sanctions." Rather, defendant's sole contention is that "counsel should have requested an adverse inference instruction where police officers had the ability to videotape field sobriety tests, but failed to do so." Defendant argues that the adverse inference instruction is applicable in criminal cases. He also again argues that a negative inference instruction is appropriate because the legislative intent for mandating the recording of police-citizen encounters is thwarted when an officer fails to make such a recording.

¶ 18    Both the United States Constitution and the Illinois Constitution guarantee criminal defendants the right to effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. To prevail on a claim of ineffective assistance of trial counsel, a defendant must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and establish that (1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced defendant. See *People v. Albanese*, 104 Ill. 2d 504, 525-27 (1984) (adopting th*e Strickland* standard). A defendant must demonstrate that counsel's performance was objectively unreasonable and there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. *People v. Veach*, 2017 IL 120649, ¶ 30. Both prongs must be established to support a finding of ineffective assistance of counsel. *Id.* To establish the deficient performance prong, defendant must overcome the presumption that counsel's conduct was the result of trial strategy. *People v. Perry*, 224 Ill. 2d 312, 341-42 (2007).

¶ 19    In this case, defendant argues his counsel's performance was objectively unreasonable because his counsel "failed to offer the jury any instruction on how it could weigh the officer's failure to record the incident against [the officer's] testimony" and failed to request a jury instruction "in accordance with Illinois Pattern Jury Instruction, Civil, 5.01." Defendant argues that IPI Civil (2011) No. 5.01 is "appropriate in criminal cases" and cites various cases in support of this contention—*People v. Moore*, 2016 IL App (1st) 133814, ¶ 17; *People v. Aronson*, 408 Ill. App. 3d 946, 953 (2011); *In re Julio C.*, 386 Ill. App. 3d 46, 53 (2008); *People v. Camp*, 352 Ill. App. 3d 257, 262 (2004); and *People v. Danielly*, 274 Ill. App. 3d 358, 368 (1995). Defendant acknowledges that an adverse inference instruction is typically given when evidence has been destroyed but argues that "increasing importance has been placed on the production and preservation of recordings made by squad car cameras during law enforcement actions." Defendant notes that, pursuant to section 30 of the State Police Act (20 ILCS 2610/30 (West 2018)), the legislature has indicated that Illinois State Police squad cars are to be equipped with recording equipment that "shall record" activities outside a patrol vehicle whenever an officer reasonably believes recording may assist with prosecution, may enhance safety, or for any other lawful purpose.

¶ 20    Section 30 of the State Police Act provides, in pertinent part:

> "(b) By June 1, 2009, the Department [of State Police] shall install in-car video camera recording equipment in all patrol vehicles. Subject to appropriation, all patrol vehicles shall be equipped with in-car video camera recording equipment *** capable of recording for a period of 10 hours or more by June 1, 2011. ***

(c) *** [I]n-car video camera recording equipment *** incapable of recording for a period of 10 hours or more shall record activities outside a patrol vehicle whenever (i) an officer assigned a patrol vehicle is conducting an enforcement stop; (ii) patrol vehicle emergency lights are activated or would otherwise be activated if not for the need to conceal the presence of law enforcement; or (iii) an officer reasonably believes recording may assist with prosecution, enhance safety, or for any other lawful purpose. *** [I]n-car video camera recording equipment *** incapable of recording for a period of 10 hours or more shall record activities inside the vehicle when transporting an arrestee or when an officer reasonably believes recording may assist with prosecution, enhance safety, or for any other lawful purpose.

(1) Recording for an enforcement stop shall begin when the officer determines an enforcement stop is necessary and shall continue until the enforcement action has been completed and the subject of the enforcement stop or the officer has left the scene.

(2) Recording shall begin when patrol vehicle emergency lights are activated or when they would otherwise be activated if not for the need to conceal the presence of law enforcement, and shall continue until the reason for the activation ceases to exist, regardless of whether the emergency lights are no longer activated.

(3) An officer may begin recording if the officer reasonably believes recording may assist with prosecution, enhance safety, or for any

other lawful purpose; and shall continue until the reason for recording ceases to exist.

(d) In-car video camera recording equipment with a recording medium capable of recording for a period of 10 hours or more shall record activities whenever a patrol vehicle is assigned to patrol duty.

(e) Any enforcement stop resulting from a suspected violation of the Illinois Vehicle Code shall be video and audio recorded. Audio recording shall terminate upon release of the violator and prior to initiating a separate criminal investigation.

(f) Recordings made on in-car video camera recording medium shall be retained by the Department for a storage period of at least 90 days. Under no circumstances shall any recording made on in-car video camera recording medium be altered or erased prior to the expiration of the designated storage period. Upon completion of the storage period, the recording medium may be erased and reissued for operational use unless otherwise ordered by the District Commander or his or her designee or by a court, or if designated for evidentiary or training purposes.

(g) Audio or video recordings made pursuant to this Section shall be available under the applicable provisions of the Freedom of Information Act. Only recorded portions of the audio recording or video recording medium applicable to the request will be available for inspection or copying.

(h) The Department shall ensure proper care and maintenance of in-car video camera recording equipment and recording medium. An officer operating a

patrol vehicle must immediately document and notify the District Commander or his or her designee of any technical difficulties, failures, or problems with the in-car video camera recording equipment or recording medium. Upon receiving notice, the District Commander or his or her designee shall make every reasonable effort to correct and repair any of the in-car video camera recording equipment or recording medium and determine if it is in the public interest to permit the use of the patrol vehicle.

(i) The Department may promulgate rules to implement this amendatory Act of the 95th General Assembly only to the extent necessary to apply the existing rules or applicable internal directives." *Id.*

¶ 21   IPI Civil (2011) No. 5.01 provides, in pertinent part, that if a party fails to offer evidence within its power to produce, jurors may infer that the evidence would be adverse to the party if the jurors believe (1) the evidence was under the control of the party and could have been produced by the exercise of reasonable diligence, (2) the evidence was not equally available to an adverse party, (3) a reasonably prudent person under the same or similar circumstances would have offered the evidence if he believed the evidence to be favorable to him, and (4) no reasonable excuse for the failure has been shown. Notably, there is no comparable missing evidence instruction in the criminal jury instructions. See generally Illinois Pattern Jury Instructions, Criminal (approved July 18, 2014) (hereinafter IPI, Criminal). IPI Civil (2011) No. 5.01 is a civil jury instruction prepared for use in civil cases, and "its use in criminal cases could result in plain error since it clearly could be interpreted to conflict with a defendant's fifth amendment right to remain silent." *People v. Hall*, 235 Ill. App. 3d 418, 430 (1992). If IPI Civil (2011) No. 5.01 is tendered in a criminal case, the comments on the missing evidence may

violate defendant's presumption of innocence by the jury possibly imposing a burden of proof on defendant to present evidence when the defense is under no obligation to present any evidence in a criminal prosecution. *People v. Clarke*, 391 Ill. App. 3d 596, 617-18 (2009). Furthermore, " '[c]ourts are under a general obligation to avoid giving instructions which unduly emphasize one part of the evidence in a case [citation] and are not required to give an instruction that would provide the jury with no more guidance than that available to them by application of common sense.' " See Illinois Pattern Jury Instructions Criminal, No. 3.00 (approved Oct. 17, 2014) (quoti*ng People v. McClellan*, 62 Ill. App. 3d 590, 595 (1978)). We, therefore, disagree with defendant's general contention that IPI Civil (2011) No. 5.01 "is appropriate in criminal cases."

¶ 22       Additionally, the cases cited by defendant do not support defendant's contention that IPI Civil (2011) No. 5.01 is "appropriate" in criminal cases where officers fail to record the field sobriety tests despite having functioning equipment to do so. The cases cited by defendant discuss giving an adverse inference jury instruction in the context of imposing discovery sanctions against the State for its failure to produce evidence. See *Aronson*, 408 Ill. App. 3d at 952-53 (affirming the trial court's grant of defendant's petition to rescind the statutory summary suspension of her driving privileges where the trial court denied defendant's motion for rescission as a discovery sanction for the State's failure to produce the video of the field sobriety tests and, instead, applied an inference that the video was favorable to defendant when weighing the evidence at the rescission hearing); *Julio C.*, 386 Ill. App. 3d at 53-54 (holding that the State's failure to provide notice of its intent to release a vehicle in its possession constituted a discovery violation but reversing the sanction of a dismissal of the charges against juvenile because the vehicle was not exculpatory evidence, with the reviewing court noting that on remand the juvenile had a right to a jury trial and "the trial court could give a limiting instruction

based on Illinois Pattern Jury Instructions, Civil, No. 5.01"); *Camp*, 352 Ill. App. 3d at 262 (reversing the dismissal of DUI charges against defendant as too excessive a discovery sanction against the State for its inadvertent loss of a video of defendant performing field sobriety tests and noting the trial court on remand may consider a variety of "less drastic" options, including "instructing the jury that the absence of the videotape requires an inference that the tape's contents are favorable to defendant"); *Danielly*, 274 Ill. App. 3d at 368 (holding that there was no due process violation where police did not act in bad faith by returning the victim's underwear to the victim in defendant's aggravated criminal sexual assault case and concluding the nonpattern adverse inference jury instruction tendered by defendant was appropriate where the underwear at the time of trial was not within the State's power to produce). However, defendant does not argue that a discovery violation occurred in this case and has indicated that he is not arguing his counsel was ineffective for failing to seek a discovery sanction. Moreover, *Aronson* is distinguishable because that case involved a civil summary suspension wherein defendant had the burden of proof and giving IPI Civil (2011) No. 5.01 in that case does not involve the same potential constitutional impingements as would be involved by giving the instruction in a criminal case. See *Hall*, 235 Ill. App. 3d 418; *Clarke*, 391 Ill. App. 3d at 617-18.

¶ 23    Perhaps, arguably in light of the directive in section 30 of the State Police Act, a request for a discovery sanction would be warranted where an officer fails to record field sobriety tests—although notably the directive is to the Department of the State Police, and the officer in this case was employed by the City of Moline Police Department. See 20 ILCS 2610/30 (West 2018); *People v. Moises*, 2015 IL App (3d) 140577, ¶ 13 (opinion of Schmidt, J.) (indicating the trial court erred by barring testimony about defendant's field sobriety tests as a discovery sanction where the police deputy (it is not clear whether he was a municipal or state police deputy)

directed defendant to perform field sobriety tests in an area off-camera and "[p]olice officers are not required by law to conduct field sobriety tests within the view of a squad car camera"); *id.* ¶ 25 (Lytton, J., specially concurring) (finding remand was appropriate to determine why the field sobriety tests were conducted off camera); *id.* ¶ 30 (Holdridge, J., dissenting) (finding section 30 of the State Police Act, requiring state police to record traffic stops resulting from a suspected violation of the Vehicle Code, is a mandatory directive so that it would not have been an abuse of the trial court's discretion to impose a discovery sanction based upon the deputy's failure to record the field sobriety tests). Nonetheless, as previously noted, defendant has specifically indicated that he "is not arguing that counsel was ineffective for failing to request discovery sanctions."[1] Therefore, we need not determine whether Wade's failure to record the field sobriety tests constituted a discovery violation or whether the trial court would have acted within its discretion by giving IPI Civil (2011) 5.01 as a discovery sanction had defense counsel requested it. Consequently, the cases cited by defendant—*Aronson*, *Julio C.*, *Camp*, and *Danielly*—all of which dealt with discovery sanctions, have no bearing on the case at hand.

¶ 24        Also, the *Moore* case cited by defendant does not support his contention that his counsel's performance fell below an objective standard of reasonableness. See *Moore*, 2016 IL App (1st) 133814, ¶¶ 32, 37-38, 41 (affirming the trial court's denial of defendant's motions to bar testimony and dismiss the murder indictment as discovery sanctions against the State where the State failed to preserve certain photo arrays). In *Moore*, prior to defendant's murder trial, defendant filed a motion for discovery sanctions because the State had failed to preserve four

---

[1]A discovery violation can be analyzed two ways: (1) as a due process violation under which the failure to preserve material exculpatory evidence is a discovery violation and the failure to preserve evidence that is only potentially useful does not violate due process unless the defendant can show bad faith by the State, or (2) as a violation under Illinois Supreme Court Rule 415(g)(i) (eff. Oct. 1, 1971), under which a defendant is only required to show that a party "failed to comply with an applicable discovery rule or an order issued pursuant thereto." *People v. Borys*, 2013 IL App (1st) 111629, ¶ 17.

photo arrays from which witnesses either identified the codefendant as the shooter and the defendant as also having a gun, or from which witnesses had made no identification at all. *Id.* ¶ 4. The trial court in *Moore* denied the motion for discovery sanctions but *sua sponte* determined that defendant was entitled to "the standard instruction relating to lost evidence in the care and custody of the police department allowing a negative inference to be drawn from the missing evidence and [allowing] the opportunity for the Defense to argue that any reasonable inference that can be drawn from the missing evidence." *Id.* The trial court specifically indicated, " 'I'm not really imposing a sanction' " and then, prior to jury deliberations, admonished the jury with Illinois Pattern Jury Instructions, Civil, No. 5.01 (Supp. 2000)—that if a party had failed to offer evidence within its power to produce then jurors could infer the evidence would be adverse to that party if that evidence was under control of the party and could have been produced with reasonable diligence, the evidence was not equally available to an adverse party, a reasonably prudent person under the same or similar circumstance would have offered the evidence if he believed it to be favorable to him, and there was no reasonable excuse for the failure had been shown. *Moore*, 2016 IL App (1st) 133814, ¶¶ 4, 17. The jury found the defendant guilty. *Id.* ¶ 18. On appeal, the Appellate Court, First District, affirmed, holding the trial court acted within its discretion in deciding not to impose a discovery sanction. *Id.* ¶¶ 32, 38. In *dicta*, the *Moore* court additionally stated that it was reasonable for the trial court to admonish jurors that they could make a negative inference. See *id.* ¶ 38 ("[u]nder these circumstances, we find the court's decision not to impose a sanction but to instead admonish the jury that it was permitted to make a negative inference was reasonable and not an abuse of discretion"). The issue of whether the trial court had abused its discretion by *sua sponte* giving the adverse inference jury instruction, however, was not an issue raised on appeal. See *id.* ¶ 1. Therefore, *Moore* does not support

defendant's contention that his counsel was ineffective for failing to request an adverse inference jury instruction in accordance with IPI Civil (2011) 5.01.

¶ 25    Consequently, defendant has failed to demonstrate his counsel's performance fell below an objective standard of reasonableness, and we therefore need not address the prejudice prong of the *Strickland* test. We conclude defendant has failed to establish his counsel's ineffectiveness and, thus, affirm his conviction.

¶ 26                                    CONCLUSION

¶ 27    The judgment of the circuit court of Rock Island County is affirmed.

¶ 28    Affirmed.

**No. 3-16-0161**

| | |
|---|---|
| **Cite as:** | *People v. Blackwood*, 2019 IL App (3d) 160161 |
| **Decision Under Review:** | Appeal from the Circuit Court of Rock Island County, No. 12-DT-156; the Hon. William S. McNeal, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Peter A. Carusona, and Bryon Kohut, of State Appellate Defender's Office, of Ottawa, for appellant. |
| **Attorneys for Appellee:** | John L. McGehee, State's Attorney, of Rock Island (Patrick Delfino, David J. Robinson, and Steven A. Rodgers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |