2021 IL App (1st) 170889-U

No. 1-17-0889

Order filed March 15, 2021

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 09 CR 20466 |
| | ) | |
| KEITH PEARSON, | ) | Honorable |
| | ) | Domenica A. Stephenson, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE WALKER delivered the judgment of the court.
Justices Hyman concurred in the judgment and order. Justice Coghlan dissented.

**ORDER**

¶ 1    *Held*:   The circuit court's first stage dismissal of defendant's *pro* se postconviction petition is reversed where an affidavit attached to a petition states that the affiant witnessed the homicide and told police he saw defendant acting in self-defense, corroborating an otherwise uncorroborated defense, and where the petition alleges the gist of a claim that trial counsel was ineffective.

¶ 2    Defendant Keith Pearson appeals from the circuit court's summary dismissal of his *pro se*

first stage petition for relief brought pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS

5/122-1 *et seq.* (West 2016)). He attached to his petition the affidavit of a witness whose testimony would have supported his claim that he acted in self-defense. We find that the affidavit supports a finding that Keith either received ineffective assistance of counsel, or the State violated Keith's right to due process by withholding exculpatory evidence. We reverse and remand to advance the petition to the second stage of postconviction proceedings.

¶ 3                                    I. BACKGROUND

¶ 4      On October 7, 2009, around 8 p.m., Keith fired several gunshots out of the passenger side of a car driven by Keith's twin brother, Kelly Pearson. One shot killed Natasha Howliet. Prosecutors charged Keith and Kelly, both members of the Unknown Vice Lords gang, with murder.

¶ 5      The shooting on October 7 resulted from several prior shootings. On July 6, 2009, Kelly drove a car owned by his girlfriend, Veronica Estudillo. Keith and Terrence Binion rode with Kelly. Near the intersection of Jackson Boulevard and St. Louis Avenue, a car pulled up next to Estudillo's car, and a gun from the passing car discharged nine or ten bullets into Estudillo's car, killing Binion and injuring Kelly. Kelly recognized the car as one that belonged to a member of the New Breed gang. He told police he saw a black man wearing a hoodie shooting, but he did not further describe the shooter.

¶ 6      On September 20, 2009, someone shot at Keith. Keith told police he could not identify the shooter, but he heard on the street that a man called Black, also known as Mitch, a member of the New Breed, was the shooter. On September 30, 2009, someone shot at Kelly while Kelly was driving Estudillo's car. Keith started carrying a gun after September 30, 2009.

¶ 7     On October 7, 2009, Kelly again drove Estudillo's car, with Keith in the passenger seat. Less than half a mile from Keith's home, Kelly turned left from Madison to take Homan north. As Kelly came to a stop in the intersection, Keith fired the gun in the direction of a bus stop at the corner. One of the bullets killed Howliet.

¶ 8     Keith called Curtis Pearson, a cousin of Keith and Kelly, from the car shortly after the shooting. Curtis agreed to meet Keith and Kelly at a gas station. The next day, Kelly took Estudillo's car to a parking lot and arranged for a mechanic to pick it up there and take it to the mechanic's home, several miles from Kelly's home. Kelly told Estudillo about the shooting and the location of her car.

¶ 9     Police arrested Keith and Kelly based on statements they took from witnesses at the bus stop. At the jury trial, Keith admitted that he fired the gun, but he claimed that he acted in self-defense.

¶ 10    Two of the witnesses who spoke to police at the scene testified at the trial. Michael Morris testified that he did not belong to the New Breed gang, but he sometimes associated with members of the New Breed gang. Morris said that New Breeds had no dispute with Vice Lords. Morris saw Estudillo's car turn slowly, and then he heard gunshots. No one asked Morris whether he sometimes associated with members of the Vice Lords. No one asked Morris whether he had a gun, or whether he saw anyone else at the bus stop with a gun.

¶ 11    Terrance Burdine also saw Estudillo's car turn slowly before he heard the gunshots. Neither party asked Burdine whether he had a gun with him on October 7, 2009. Neither party asked Burdine whether he saw a gun in the hands of anyone at the bus stop. No one asked Burdine whether he belonged to a gang or associated with any members of any gangs. The court permitted

a witness to read into the record a statement Burdine signed at the police station, where Burdine said Estudillo's car almost stopped in the intersection before turning north.

¶ 12    The court also permitted a witness to read to the jury a transcript of Curtis's testimony to the grand jury. Curtis there testified that Keith admitted to shooting towards the bus stop and said, "man, I fucked up."

¶ 13    John Harris testified that on October 13, 2009, police locked him in a jail cell next to a cell holding Keith. Keith told Harris that while Keith was in a car at Madison and Homan, he saw at a bus stop "these guys [who] shot at their car recently, and [Keith] was going to retaliate on the guys."

¶ 14    Keith testified that after the murder of Binion in July 2009, Mitch of the New Breed shot at Keith once near the intersection of Madison and Homan, and later near the intersection of Central Park and Van Buren. Keith testified that he had no problem with New Breeds. On October 7, 2009, Keith received a call from a customer seeking drugs. The customer asked to meet Keith at Madison and Homan and Kelly agreed to drive him there. As Kelly neared the intersection, Keith saw a man approach the car from the bus stop. At first, Keith thought the man was the customer who had called, but then he saw "it was Mitch, and he was pulling a gun from his waistband running towards the vehicle." Keith, in fear for his life, fired at Mitch, who ran east on Madison, while Kelly turned to head north on Homan.

¶ 15    The jury found Keith guilty of first-degree murder. The trial court sentenced Keith to 65 years in prison. The appellate court affirmed the conviction and sentence on the direct appeal. *People v. Pearson*, 2016 IL App (1st) 132736-U.

¶ 16    Keith filed a postconviction petition on December 16, 2016. He attached to the petition an affidavit signed by Quenton Bates, who stated:

> "On October 7, 2009 around 8 p.m. I was sitting in my car at the stoplight on Homan and Madison when I wi[t]nessed a shooting! On that day I saw a tall dark skin guy wearing a dark color hoody shirt with a gun in his hand running from the bus stop on Madison directly toward a maroon car as it was turning off Madison onto Homan. I notice that it was two people in the car as the guy with the gun was running towards this car[.] I heard multiple gunshots as the car fled down Homan and the guy with the gun ran down Madison[. A]t that moment I decided to pull over and see if anybody had Got shot, moments later the police arrived, I don't recall the officers name but I explained to the police what I had [seen] and he took down my information and told me they would contact me if need be but they never did."

¶ 17    The affidavit explained how Bates learned that a court sentenced Keith and Kelly for the homicide Bates saw. Keith argued in his postconviction petition that his counsel provided ineffective assistance by failing to discover that Bates could provide exculpatory testimony. The trial court dismissed Keith's petition as frivolous. The court in its written order did not mention Bates. Keith now appeals.

¶ 18                                    II. ANALYSIS

¶ 19    On appeal, Keith contends that the trial court erred when it dismissed his petition at the first stage of postconviction proceedings. "To survive first-stage dismissal, a *pro se* petitioner need only present the 'gist' of a constitutional claim, which is a 'low threshold' requiring only a

limited amount of detail in the petition." *People v. Jones*, 211 Ill. 2d 140, 144 (2004). "When initiating a post-conviction action, a petitioner is merely required to submit a petition setting forth any facts that may indicate a substantial denial of his constitutional rights. [Citation.] The petitioner need not even articulate the correct legal theory supporting his claim, providing the petition alleges facts indicating a constitutional deprivation." *People v. Ross*, 139 Ill. App. 3d 674, 679 (1985). We review *de novo* the dismissal of a postconviction petition at the first stage of postconviction proceedings. *People v. Buffer*, 2019 IL 122327, ¶ 12.

¶ 20    Keith argues that he received ineffective assistance of counsel because his attorney failed to present to the jury the testimony of Bates. To show ineffective assistance of counsel, "a defendant must show that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v. Dupree*, 2018 IL 122307, ¶ 44. Counsel usually makes a strategic choice of whether to call a witness to the stand, and the courts generally will not second guess counsel's strategic choices. *People v. King*, 316 Ill. App. 3d 901, 913 (2000). "However, *** counsel's tactical decisions may be deemed ineffective when they result in counsel's failure to present exculpatory evidence of which he is aware, including the failure to call witnesses whose testimony would support an otherwise uncorroborated defense." *King*, 316 Ill. App. 3d at 913. Keith, with no corroboration, testified that a man with a gun approached Estudillo's car. The finder of fact may have found the defense more credible if a witness had corroborated Keith's testimony. We find a reasonable probability that Keith would have achieved better result if the jury had heard Bates's testimony.

¶ 21    The State argues Keith's petition does not state the gist of a claim for ineffective assistance of counsel because the record does not show how counsel could have found Bates. The State also contends the arrest report in the record does not identify any of the witnesses police interviewed at the crime scene.

¶ 22    In his affidavit, Bates averred that he witnessed the shooting, spoke with police officers on the scene immediately thereafter, and provided his contact information. A review of the police reports would have revealed Bates name. The State argues defense counsel cannot be found ineffective because Keith did not allege that counsel knew or should have known about Bates, but Keith has alleged that counsel failed to investigate. The failure to investigate allegation makes the arguable claim that counsel was ineffective. The State makes its argument as if the case was dismissed at the second stage of postconviction proceedings. We remind the State that this matter involves the judge's summary dismissal of the petition during the first stage where the petition is not subject to adversarial testing. See *People v. Allen*, 2015 IL 113135 ⟦ 33. In addition, "most postconviction petitions are drafted by pro se defendants, and accordingly, the threshold for a petition to survive the first stage of review is low. [citation]. If a petition provides facts stating the gist of a constitutional claim, first-stage dismissal is inappropriate. *Id* ⟦ 24. The court is to take the allegations of the petition as true and construe those allegations liberally during first stage review. *Id* ⟦ 41. The allegations of failing to contact Bates and present other witnesses who were capable of corroborating Keith's self-defense claim, may demonstrate defense counsel's ineffectiveness by failing to investigate. See *People v. Bolden*, 2014 IL App (1st) 123527, ¶¶ 45-46.

¶ 23                                  III. CONCLUSION

¶ 24    The facts alleged in the postconviction petition state the gist of a constitutional claim for ineffective assistance of counsel if a police report shown to counsel names Bates as a witness. Accordingly, we find that the petition states the gist of a claim for a violation of Keith's constitutional rights.  We reverse the dismissal of Keith's postconviction petition and remand to advance the petition to the second stage of postconviction proceedings.

¶ 25    Reversed and remanded.

¶ 26    JUSTICE COGHLAN, dissenting:

¶ 27    The majority asserts that "if a police report shown to counsel names Bates as a witness," defendant's postconviction petition states the gist of a constitutional claim for ineffective assistance of counsel. I respectfully disagree with this conclusion.

¶ 28    At the first stage of post-conviction proceedings, the applicable test for ineffective assistance of counsel is "whether it is arguable that counsel's performance fell below an objective standard of reasonableness and whether it is arguable that the defendant was prejudiced." *People v. Tate*, 2012 IL 112214, ¶ 22.

¶ 29    "The failure to interview witnesses may indicate actual incompetence [citation], particularly when the witnesses are *known to trial counsel* and their testimony may have been exonerating." (Emphasis added.) *People v. Greer*, Ill. 2d 103, 123 (1980); see also *People v. Smith*, 241 Ill. App. 3d 530, 544 (2003) (same); *People v. O'Banner*, 215 Ill. App. 3d 778, 792 (1991) (same); *People v. Upshaw*, 2017 Il App 1st 151405, ¶ 39 ("Although the decision of whether to present a witness is generally considered a matter of trial strategy, 'counsel may be deemed ineffective for failing to present exculpatory evidence of which he is aware.' "). The record on appeal does not reflect and defendant does not allege that defense counsel "was aware" of Bates'

existence as a potential witness. Similarly, the record does not support the assumption that "[a] review of the police reports would have revealed Bates' name."

¶ 30    "[A]n attorney cannot be found to have made decisions based on valid trial strategy where he or she fails to conduct a *reasonable* investigation" and "[a]ttorneys have an obligation to explore all *readily available* sources of evidence that might benefit their clients." ((Internal quotations omitted and emphasis in original.) *People v. Irvine*, 379 Ill. App. 3d 116, 130 (2008)). However, defendant here has failed to show that Bates was a readily available source or that counsel failed to conduct a reasonable investigation of potential witnesses. Newly discovered evidence is "evidence that was not available at defendant's original trial and that defendant could not have discovered sooner through diligence." *People v. Morgan*, 212 Ill. 2d 148, 154 (2004). Tellingly, defendant characterizes Bates' affidavit as "newly discovered evidence" in his petition and Bates acknowledges that he "moved out of town" shortly after the shooting. Even taking defendant's assertions as true, as we must at this stage, he does not make an arguable claim that "counsel's performance fell below an objective standard of reasonableness." See *Tate*, 2012 IL 112214, ¶ 22.

¶ 31    For the reasons stated, I respectfully dissent from the majority's decision in the present case. I would affirm the dismissal of defendant's postconviction petition.